[No. 11575.   Department One.   May 8, 1914.]

FERGUSON-HENDRIX COMPANY, *Appellant*, v. FIDELITY AND
DEPOSIT COMPANY OF MARYLAND, *Respondent*.[1]

CONSTITUTIONAL LAW — POLICE POWER — FACTORS — REGULATION—
EQUAL PROTECTION OF THE LAWS. It is a valid exercise of the police
power of the state to require of commission merchants engaged in
selling farm, dairy, orchard, or garden produce, to obtain a license
and give a bond to the state "executed by a surety company," au-
thorized to do business in this state, in the sum of $3,000, for the
benefit of persons causing produce to be sold on commission; and
it is not unconstitutional as a denial of equal protection of the laws,
in that it required a surety bond in place of a money deposit or per-
sonal security.

CONTRACTS — VALIDITY — VIOLATION OF STATUTORY REGULATIONS—
COLLATERAL CONTRACTS—FACTORS—INDEMNITY—DEFENSES. It is no
defense to an action on a bond given by a compensated surety,
guaranteeing the fidelity of an employee of a commission merchant,
that the merchant was doing business without a license or bond,
in violation of Rem. & Bal. Code, § 7024 *et seq.*, making it "unlaw-
ful" and a misdemeanor so to do; since the act does not invalidate
the contracts made by such a commission merchant, and the failure
to comply with the statute was collateral to the bond.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered September 6, 1913, dismissing,
on the pleadings, an action on contract. Reversed.

*Kerr & McCord*, for appellant.
*Marion A. Butler*, for respondent.

GOSE, J.—This is an action to recover for an alleged
breach of the conditions of a fidelity bond. A judgment was
entered upon the pleadings, dismissing the action. The
plaintiff has appealed.

The appellant, a commission merchant, employed one
Busey as bookkeeper and cashier and took from the respond-
ent, a compensated surety, a bond, wherein it agreed to re-
imburse the appellant to the extent of the bond for any pe-

[1]Reported in 140 Pac. 700.

cuniary loss it should sustain "by reason of any personal act or acts of fraud or dishonesty" committed by Busey in the performance of his duties as bookkeeper and cashier. It is alleged that, during the life of the bond, Busey, through acts of fraud and dishonesty in the performance of his duties as cashier and bookkeeper for appellant, caused it to sustain a loss of $2,922.98. The respondent resists liability upon the ground, among others, that the appellant, at the time of taking the bond and continuously thereafter, was a commission merchant whose principal business was selling farm, dairy, orchard, and garden produce on commission, and that it had not complied with the provisions of the Laws of 1907, page 266 *et seq.* (Rem. & Bal. Code, § 7024 *et seq.*). It is alleged that the appellant had neither applied for nor obtained a license from the commissioner of horticulture, nor given a bond to the state as required by that act. This not having been denied, a judgment was entered dismissing the action.

Section 1 (Id., § 7024) of the statute to which reference has been made makes it "unlawful" for a commission merchant to engage in the business of selling farm, dairy, orchard and garden produce "on commission" without first obtaining a license from the commissioner of horticulture to carry on such business and giving a bond to the state "executed by a surety company" authorized to do business in the state, the bond to be in the sum of $3,000 for the benefit of persons consigning produce to be sold on commission, the form of the bond to be approved by the attorney general. Other sections of the act make detailed provision for the keeping and rendering of accurate accounts, and making punctual reports and remittances to the consignor. Section 11 of the act (Id., § 7034) provides that any person or corporation engaged in selling such products on commission who fails to comply with any of the provisions of the act shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $25 nor more than $500. Section 12 (Id., § 7035) provides that the commissioner of horticulture

shall revoke any license issued under the provisions of the act, upon a holder of a license being convicted of any violation of the act.

The appellant first contends that the act is unconstitutional in that the bond is required to be executed by a surety company authorized to do business in the state, thus denying it the right to deposit money or to give personal security. We cannot yield our assent to this view. In *State ex rel. Beek v. Wagener*, 77 Minn. 483, 80 N. W. 633, 778, 1134, 77 Am. St. 681, 46 L. R. A. 442, a similar act was sustained. The act there reviewed required the warehouse commission to fix the amount of the bond of commission merchants, and provided that, upon its execution with "sufficient security" and the payment of one dollar, the commission should issue a license. The court, in a carefully considered opinion, said that the wisdom of the act was a legislative question; that the measure was a lawful regulation for the public good, a legitimate exercise of the police power of the state; that it was not class legislation, but that on the contrary it was framed to meet "the crying evils which it was believed had grown up with this branch of business." In *In re Clark's Estate*, 195 Pa. St. 520, 46 Atl. 127, 48 L. R. A. 587, the court sustained the constitutionality of an act authorizing a receiver, guardian, trustee, executor or administrator, etc., required by law or order of the court to give bond as such, to include as an expense in the execution of the trust such reasonable sum as he may have paid to a surety company for becoming his surety, to be allowed by the court in which he was required to account. The court observed that there was a material difference in quality between the insurance afforded by indemnity companies and that afforded by a private individual, who was usually the relative or friend of the principal or a "professional bail-goer" without responsibility. It is well known that lapse of time, fluctuations in values of property, the uncertainty of human life, and the risk of a dishonest surety, often render personal security inadequate when

called upon to meet its promised responsibility.  This is doubtless one of the reasons which influenced the legislature in requiring that the bond be executed by a surety company authorized to do business in this state.

The appellant relies upon *State v. Robins*, 71 Ohio St. 273, 73 N. E. 470, where a statute requiring a similar bond was held to be in contravention of the bill of rights, in that it was an unconstitutional restriction upon the liberty to contract, and that it denied "equal protection and benefit," in violation of the constitution.  It was conceded that the law was valid if the public welfare justified or required it, but it was argued that the surety bond does not increase the protection of the obligee.  It was said:

"We have not been advised of any necessity for, or general demand for, the abolition of personal security and the substitution therefor of corporate security, and the reasons which we have given persuade us that the public welfare does not require it."

It was further remarked that it was evident to the court that it would be more economical for the public to become its own insurer of the good faith of its officials, which would result perhaps in no official bond in any case.  We had supposed that, under the constitution, the question as to whether the public welfare justified or required the state to exert its police power was a legislative question, and that ordinarily courts would not thwart the legislative will if any reason existed or could be suggested for the exercise of the power.  It is certain that personal sureties have frequently failed to respond to their obligations, and we must assume that the legislature knew this fact and considered that the character of bond under review would afford a safer, and hence a better, security to those who would be its beneficiaries.  It would seem that the power to exact the security includes the right to determine the character and sufficiency of the security; that the greater power includes the lesser power.  The presumption always obtains that a legislative act is constitu-

tional, and it will be held unconstitutional only where it so plainly appears to be so as to free the mind from reasonable doubt. Guided by these principles, and for the reasons suggested, we are constrained to hold the law a valid exercise of the police power of the state.

The respondent contends that there can be no recovery upon the bond because the statute makes it "unlawful" to carry on a commission business without obtaining a license and giving a bond, and penalizes the offender, although the act does not in terms make a transaction without a license or bond void, and authorities are cited to that effect. We have held to the contrary. *Way v. Pacific Lumber & Timber Co.*, 74 Wash. 332, 133 Pac. 595. We were there reviewing the insurance code, Laws 1911, page 195, § 33 (3 Rem. & Bal. Code, § 6059-33), which contains prohibitory words which we treated as being legally equivalent to the word "unlawful." That act also provided for a revocation of the license and for the imposition of a fine. We said:

"Plaintiff's error lies in the assumption that the contract between the copartnership and the defendant was void, whereas the rule is that a contract which violates a statutory regulation of business is not void unless made so by the terms of the act."

The reasoning in that case is controlling here. There can be no legal distinction in respect to the issue at bar between a statute which says "thou shalt not" do a certain thing, and one which says that "it shall be unlawful" to do the same thing, where each provides penalties without in terms declaring that any transaction had without first complying with the statute shall be treated as void.

Moreover, we think there is a sound distinction between an action for the recovery of the agreed price of liquor sold in defiance of a statute requiring a license, as was the case in *Miller v. Ammon*, 145 U. S. 421, and a case of this character where the action is upon a bond given by a compensated

surety guaranteeing the fidelity of an employee. Here the failure to comply with the statute is so collateral to the contract sued upon that it would seem there is no just reason for denying liability upon that ground. *Ingersoll v. Randall*, 14 Minn. 400. Any other view would protect the burglar in the possession of goods taken from the store of a commission merchant who had not complied with the statute, and would justify a fire insurance company in refusing to pay for goods of a commission merchant destroyed by fire, if perchance it discovered he was without a license. In short, it would make of such a merchant an outlaw and his property the prey of the unscrupulous and the lawless man. We do not feel disposed to stand sponsor for so monstrous a doctrine. In *Miller v. Ammon*, it was said:

"The general rule of law is, that a contract made in violation of the statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover."

We announced the same principle in the recent case of *Stirtan v. Blethen, ante* p. 10, 139 Pac. 618.

We think the court was in error in dismissing the action. The judgment is reversed.

Crow, C. J., Ellis, Main, and Chadwick, JJ., concur.