## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## DANVILLE WAREHOUSE COMPANY, INCORPORATED, v. TOBACCO GROWERS CO-OPERATIVE ASSOCIATION, INC.

October 1, 1925.

Absent, Christian, J.

1. WAREHOUSES AND WAREHOUSEMEN—*Tobacco Warehouse—Constitutional Law—Statutes—Motives of Legislature—Case at Bar.*—Acts of 1923, chapter 109, requires tobacco to be sold only in the name of the true owner thereof, requires records of sales to be kept, and requires that such records shall be subject to inspection, and that access to the premises shall be permitted for the purpose of such inspection. The act recites that its purpose is to prevent frauds in the handling and sale of leaf tobacco. In the instant case it was argued that the motive and effect of the act was to promote the business of the Tobacco Growers' Co-operative Association, and to injure that of the warehousemen.

   *Held:* That this contention raised solely a question of public propriety and advantage, the determination of which belongs exclusively to the legislative department of the government and presents no question for judicial decision by a court.

2. WAREHOUSES AND WAREHOUSEMEN—*Tobacco Warehouses—Regulation—Police Power.*—From early colonial days and on through the history of the Commonwealth it has been the policy of the State to regulate the business of conducting tobacco warehouses by legislation; tobacco warehouses are affected with a public interest and are subject to public regulation, and Acts of 1923, chapter 109, regulating the sale of leaf tobacco and requiring record of the names of the owners and growers of tobacco sold, and permitting inspection of such record, is within the police power of the State, and is not an arbitrary interference with private business; indeed the statute recognizes and accommodates itself to the customary methods of such business.

3. STATUTES—*Motive of the Legislature—Question for Legislature or Court.*—The wisdom, expediency, justice or injustice of a statute are questions to be determined by the General Assembly, not by the courts.

4. STATUTES—*Special or Local Laws—Tobacco Warehouses—Acts of 1923, Chapter 109.*—Acts of 1923, chapter 109, requiring leaf tobacco to be

sold only in the name of the true owner, and for records to be kept of sales, and inspection permitted of the records, does not violate section 63 of the Constitution of 1902. As the statute applies throughout the State to all persons and property within the classes specified, and as the classification is reasonable and not arbitrary, the statute is not special, but general.

5. Searches and Seizures—*Tobacco Warehouses—Acts of 1923, Chapter 109—Case at Bar.*—Acts of 1923, chapter 109, requiring leaf tobacco to be sold only in the name of the true owner, and for records to be kept of sales, and inspection permitted of the records, does not violate the fourth amendment of the Federal Constitution and section 10 of the Virginia Bill of Rights, prohibiting general search warrants. The privileges granted by the act have no application to search warrants for the detection of crime.

6. Warehouses and Warehousemen—*Tobacco Warehousemen—Acts of 1923, Chapter 109—Warehouseman also a Dealer.*—The true construction of acts of 1923, chapter 109, considered in its entirety, requires frankness and publicity of the warehouseman at all stages of the transaction and he cannot escape these requirements simply because he is likewise a dealer.

7. Statutes—*Wisdom and Propriety of Act—Acts of 1923, Chapter 109, Providing that Sale of Leaf Tobacco shall be in the Name of the True Owner—Case at Bar.*—The act of 1923, chapter 109, providing for the sale of leaf tobacco in the name of its true owner being valid, the complaint that the defendant and its agents in complying with the provisions of the act were unlawfully and without warrant interfering with and injuring the business of the complainant is necessarily without support. The court cannot in any way undertake to pass upon the necessity for the legislation, or whether or not its stringent provisions were brought about by frauds committed in the past, or were essential to prevent such frauds in the future. The judicial tribunal can only assume that these matters, which rest in the discretion of the General Assembly, were thoroughly investigated and legislation of this character found necessary as a matter of legislative expediency and justice and right in the interest of the people at large.

8. Injunction—*Injunction Against Prosecution for Violation of Statute—Statute Held Valid—Dismissal of Injunction.*—A decree dissolving an injunction and dismissing the bill is proper where the injunction was against the prosecution of complainant for the violation of a statute, until the constitutionality and validity of the statute could be determined, and the statute was held constitutional and valid. Whether or not the business of the complainant was injured by the passage of the act, and by the ensuing mandate of the law that the complainant should comply with the provisions of the act, are questions that become immaterial upon the holding by the court

that the act was consitutional and valid; and, therefore, the taking of evidence upon such subjects was entirely immaterial and could not have altered the final determination of the case.

Appeal from a decree of the Corporation Court of the city of Danville. Decree for defendants. Complainant appeals.

*Affirmed.*

The appellant, who was the complainant in the lower court, filed its bill in equity for an injunction against the appellee, as also the mayor and the Commonwealth's attorney of the city of Danville, as defendants.

In order to a full understanding of the litigation, the bill in equity is here transcribed in full, and is as follows:

"To the Honorable D. P. Withers, judge of the corporation court of Danville, in the State of Virginia:

"The Danville Warehouse Company, Incorporated, a corporation created under the laws of the State of Virginia, and having its particular place of business at Danville, brings this, its bill, against the Tobacco Growers Co-operative Association, a corporation created under the laws of the State of North Carolina and authorized to transact business in the State of Virginia, with the Secretary of the Commonwealth of Virginia as its lawful agent and attorney in fact, upon whom all legal processes against it may be served: And thereupon, your orator complains and says:

"That since the date of its creation under the laws of the State of Virginia, it has been carrying on a tobacco auction sale warehouse business in the city of Danville, Virginia, within the powers granted to it in its charter of incorporation, which business in actual practice is as follows:

"Your orator, along with others engaged in the same kind of business, has built up a system of selling leaf tobacco for the producers thereof on warehouse floors at public auction, for cash; under which system all sales are thoroughly advertised, and representatives of all buyers of tobacco are brought together and the tobacco offered for sale in small lots or piles; so exhibited as to present to the buyers attending the sale its true character and grade; and in order to pay the producers in cash for the tobacco sold for them, your orator advances the money necessary therefor and thereafter collects the purchase price from the buyers.

"In order to facilitate this system of marketing producers' tobacco quickly for cash at the prevailing market price thereof, your orator has acquired, and maintains at great cost and expense, large, commodious tobacco sales warehouses in said city of Danville with accommodations for the growers, their teams, their wagons, trucks and automobiles, and furnishes skilled agents to handle the tobacco brought to it for sale from the time it is received until it is finally sold and paid for, less small charges, or fees, retained for such services. This system has been, and now is, the most convenient, satisfactory and fair method of securing for the producer of tobacco its value, known to your orator, and is the most popular means among producers of marketing their tobacco.

"Your orator further alleges and shows that the defendant corporation was created under the laws of the State of North Carolina and is transacting business in Virginia, North Carolina and South Carolina, as aforesaid, for the alleged purpose of selling for the producer leaf tobacco by another new system briefly described as follows:

"Through its agents and representatives it seeks to

induce all tobacco producers, or growers, in Virginia, North Carolina and South Carolina to abandon every other system of marketing their tobacco, especially that under which your orator operates, as aforesaid, and to unite with it, the defendant, in a method of pooling all the tobacco of its members and holding it for the highest price obtainable, and its purpose is thus to acquire and pool all of the tobacco raised in Virginia, North Carolina and South Carolina, and to force manufacturers and other dealers in tobacco to pay the price demanded by it. To accomplish this, said defendant solicits, by many means and ways, all producers of tobacco to unite with it and to execute a written contract, called 'growers' agreement,' to deliver to defendant, at one of its places of business, all tobacco raised by them within five years, to-wit: During the years 1922, 23, 24, 25, 26, a copy of which contract is filed herewith as exhibit 'Growers' Contract.' And to aid it in making its said pooling system a complete monopoly by finally controlling the price of all tobacco raised in said three States, said defendant has secured the passage of State laws in Virginia and North Carolina. At the extra session of the Virginia Assembly of 1923 defendant secured the passage of an Act, approved March 26, 1923, and set forth in the Acts of said extra session as chapter 109, subdivided into eight sections, and which is as follows:

" 'Chap. 109—An act to require leaf tobacco to be sold only in the name of the true owner thereof; to require records of such sales to be kept; to require the keeper of such records to permit the inspection thereof by any person, and permit access for the purpose of such inspection; and to provide penalty for the violation thereof.                      (S. B. 68)

" 'Approved March 26, 1923.

" '1. Be it enacted by the General Assembly of Virginia as follows:

" 'Section 1. Every person who shall deliver any leaf tobacco to a warehouseman or to a co-operative marketing association for sale, offer for sale or display for sale thereof, shall impart to such warehouseman or co-operative marketing association, the true name of the owner of said leaf tobacco; and it shall be the duty of such warehouseman or co-operative marketing association to keep a record of such purchase or delivery, showing the quantity of leaf tobacco so delivered, and said name of the owner thereof, given as provided herein.

" 'Section 2. Where leaf tobacco is delivered to a warehouseman or co-operative marketing association for sale, offer for sale or display for sale, by a person other than the grower thereof, or the landlord of the land upon which said tobacco was grown, it shall be the duty of said warehouseman or co-operative marketing association to keep a record showing the facts required in section one of this act, and in addition thereto, if possible, the name of the person from whom the person delivering said tobacco obtained the same, and the name of the original grower thereof, and the name of the landlord upon whose land said tobacco was grown, if the same was grown by a tenant. And said person, other than such grower or landlord, shall [impart to such warehouseman or co-operative marketing association the true name of the person from whom he obtained said tobacco, and the name of said grower thereof and said landlord. Provided, however, that this section shall not apply to licensed leaf tobacco dealers offering for resale tobacco once sold upon the warehouse floor,

and with respect to which provisions of this act have previously been complied with.

" 'Section 3. Said warehouseman or co-operative marketing association shall also place upon all leaf tobacco delivered to him or to it for sale, offer for sale, or display for sale, a ticket or card which shall state the matters and things required to be recorded by said warehouseman or co-operative marketing association by sections one and two of this act.

" 'Section 4. All cards or tickets kept, prepared or placed upon tobacco as required herein, shall, for the period of ten days after the delivery of such tobacco, be open to the inspection of any representative of any public tobacco warehouse, or tobacco growers co-operative association, during regular business hours and who shall have access to the place where said cards or tickets are kept for the purpose of such inspection.

" 'Section 5. Any person who shall give a fictitious or false name to such warehouseman or co-operative marketing association, or who shall fail to give to such warehouseman or co-operative marketing association the true name of the owner of said leaf tobacco or said person from whom said tobacco was obtained, or said grower and said landlord, upon delivering the same as aforesaid, shall be guilty of a misdemeanor. Any warehouseman or co-operative marketing association who shall fail to comply with any of the provisions of this act or who shall deny to any such representative the privilege of such inspection or access, as provided in section four, shall be guilty of a misdemeanor. Any warehouseman or co-operative marketing association who shall buy or sell tobacco as above set forth, knowing that the name in which said leaf tobacco is sold, or any name given pursuant to the provisions hereof, is false or fictitious, shall be guilty of a misdemeanor.

" 'Section 6. Any person guilty of a misdemeanor under the provisions of this act shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars.

" 'Section 7. The term 'warehouseman' as used in this act is hereby defined as any person, firm or corporation engaged in the business of selling leaf tobacco at auction, for a commission or for any other consideration.

" 'Section 8. The purpose of this act is to prevent frauds in the handling and sale of leaf tobacco.

"Your orator alleges and shows that this statute, passed in aid of defendant's purposes, imposes upon your orator burdens and requirements so severe, drastic, and in many cases so impossible, as to destroy its legitimate business, built up at great expense, through many years of experience and arduous labor, and deprive it of its liberty, rights and property without due process of law, and to deny to it equal protection of the law, in violation of the fourteenth amendment of the Constitution of the United States and of sections 1 and 11 of Article 1 of the Constitution of Virginia.

"According to the system in which your orator carries on its business, tobacco is brought to its warehouse floors for sale at its public auctions daily, to be paid for in cash immediately after the sale thereof, by a multitude of growers who come from the States of Virginia, North Carolina and South Carolina, within a long radius around the city of Danville, many of whom come with their tobacco while sales are in progress, have it weighed, registered and placed on the floor in the order of the sale; and much of the tobacco sold on the floors of your orator's warehouse is shipped in railway cars for immediate sale and a remittance of the proceeds, and it would be an unreasonable and

intolerable burden upon your orator's business if, under said statute of March 26, 1923, it is required to halt in its lawful business, delay its public sales and hold up the busy throng of buyers at its sales, in order to trace the history of each small lot or pile of tobacco, and of each producer thereof, in order to determine whether or not any of said tobacco can be traced to a member of defendant's company who may have signed one of its growers' contracts; or in order to determine whether or not the owner of any lot of tobacco on the floor for sale is *owned by* licensed dealers offering for sale tobacco heretofore sold on the warehouse floor and with respect to which the provisions of said act had been previously complied with.

"If your orator is required to examine and cross-examine every customer bringing tobacco to its warehouse floors for sale in order to ascertain for defendant whether or not each grower is a tenant, a landlord or some other kind of a dealer in tobacco; whether or not he is the true grower of the tobacco, and if not, then to obtain the name of the person from whom it was acquired; the name of the original grower thereof; the name of the landlord, if the tobacco was *grown* by a tenant; then these requirements of said act, if enforced, would not only drive away all of your orator's customers, but it would force your orator to use its agents, its place of business and to disrupt its established system of selling tobacco for the grower for the purpose of running down, discovering and bringing to justice members of defendant's association; the effect of wh ch would be to impose upon your orator's business unreasonable and impossible burdens, and to deprive your orator of its rights, liberty and property without due process of law.

"Your orator also shows that the requirement in

said act to place upon each lot of tobacco sold by it a ticket or card setting forth an abstract of the title to said tobacco, traced through all former holders thereof to the original grower thereof, is so unreasonable and burdensome as to confiscate its long established business, and to take its property without due process of law.

"Your orator further alleges that the said act of March 26, 1923, is void, because it requires it to keep its private records open to inspection by any warehouse company or tobacco growers' co-operative association competing with it in business, and because it gives free access to them and their agents to its private records contained in its private places of business. Said act is also illegal and void, because it makes all of the foregoing unreasonable, indefinite and impossible requirements to be crimes, and punishable by severe and unreasonable fines.

"Section eight of said act recites that 'it is to prevent frauds in the handling and sale of leaf tobacco,' but your orator alleges that the real character of the act cannot be concealed under such a guise, nor has defendant, under such a guise, the right to employ your orator's business and its agents to discover and to bring to an accounting the members of defendant company who commit breaches of their contracts.

"Your orator alleges and shows that there are numerous tobacco sales warehouses through the States of Virginia, North Carolina and South Carolina carrying on the same kind of tobacco business conducted by your orator, but the defendant is the only Tobacco Growers' Co-operative Association in said three States, and it is the only such association contemplated by said act of March 26, 1923.

"Your orator further shows that said act of March

26, 1923, is in violation of the fourteenth amendment of the United States Constitution, sections one and eleven, not only for the foregoing reasons, but also because it denies to your orator the equal protection of the laws, in that said act applies only to tobacco warehousemen and to co-operative marketing associations, and does not apply to the many other classes of individuals, partnerships and corporations buying, selling and dealing in leaf tobacco.

"Your orator alleges and shows that said defendant, through its agents, is attempting to enforce upon it all of the unlawful requirements of said act of March 26, 1923, and a multiplicity of suits, actions and prosecutions thereunder are threatened unless your orator attempts to comply with all of said requirements, to the ruin of its long established business, its rights and its property.

"In the exercise of the extraordinary rights which defendant claims under said act, it is sending its agents to all sales carried on by your orator on its warehouse floors, who examine all tobacco brought there for sale by its customers, and make investigations to the hurt and damage of your orator's lawful business, demanding the right to examine its private files and papers, and dictating to your orator as to how it shall mark and register all of the tobacco brought to it for sale, requiring your orator to make tedious investigations as to the title of every pile of tobacco sold by it, and for failure to comply with any and all of the requirements set forth in said acts, defendant is threatening your orator with a multitude of criminal prosecutions, and at this time has already caused it to be summoned before the Honorable Harry Wooding, mayor of the city of Danville, for failure to give access to one of its private offices to Rufus Carter, an inspec-

tion agent for defendant, for the purpose of examining its records; and has caused your orator to be summoned before the Honorable Harry Wooding, mayor of the city of Danville, to answer criminal charge under said act for designating a lot of tobacco brought to it for sale by a grower (who is not a member of defendant association) at the sale thereof as 'Royal and H.' And defendant is threatening to continue many such prosecutions against your orator under said act, and unless your orator is relieved in equity it will be harassed continually and indefinitely with many prosecutions for alleged offenses under the unlawful provisions of said act, and it will suffer irreparable loss and damage in its business; not only by the requirements of said act, if it should comply with them, but by a multiplicity of suits to defend itself, *at law*, against the unlawful provisions of said act; that defendant company is not only suing out criminal warrants against your orator before the Honorable Harry Wooding, mayor of the city of Danville, but it is calling upon the Honorable John W. Carter, Jr., Commonwealth's attorney for the city of Danville, to prosecute your orator under the warrants already brought and those to be sued out, not only before Honorable Harry Wooding, mayor of the city of Danville, but in your honor's court, upon an appeal therefrom.

"That orator does not seek to sell any tobacco belonging to the members of said defendant association, and all of its agents are instructed not to do so knowingly, but it is advised that it cannot be required to disrupt its business by using its agents and employees to help to discover the contract breakers of defendant company, and to ruin its business by the unreasonable and burdensome requirements of said act, and by submitting to the invasion of its private places of business

by the agents and secret inspectors of defendant's association.

"Inasmuch, therefore, (&c. &c. &c.)

"And it will ever pray, etc.

"DANVILLE WAREHOUSE COMPANY,
INCORPORATED.
"By JAS. H. WILSON, President."

The prayer of the bill is transcribed in the opinion of the court.

There were filed with the bill two affidavits and two warrants against the complainant for violation of the act referred to.

Upon presentation of this bill and exhibits to the judge of the corporation court in vacation, an injunction was granted restraining the defendants from further proceeding with the criminal prosecutions under the said act for a period of ninety days; this injunction being awarded on the 30th day of October, 1923.

On October 31, 1923, the Commonwealth's attorney filed a brief answer in which he denied that the act was unconstitutional and insisted that the court of equity was without jurisdiction to restrain his capacity as prosecuting officer for the Commonwealth from prosecuting any offenders against a criminal law.

On November 5, 1923, the defendant association filed an answer of considerable length, in which it denied that the warehouse auction system of selling tobacco was the most convenient, satisfactory and fair method of securing for the producer of tobacco its value, or that it was the most popular means among producers of marketing their tobacco; and averred that the means of marketing tobacco and the merits or comparative virtues of the warehouse and co-operative

systems of marketing tobacco were not in question in the litigation and not relevant to any issues to be presented in a cause relating to the enforcement of a law of the Commonwealth applicable alike and without partiality and distinction to both the co-operative system and the warehouse system of marketing tobacco. The answer goes at length into the growth and character of the co-operative marketing of tobacco as conducted by the defendant association, for the purpose of showing that it is the best system and that it is heartily approved by growers of, and dealers in, tobacco, and tended to reduce and prevent perpetration of frauds on creditors and lienors which had theretofore been committed.

As to the material allegations of the bill the answer alleges:

"Your respondent denies that this statute was passed in aid of any purpose of respondent; denies that it was passed in aid of any purpose as alleged in the petition, but admits that respondent favored and approved the said act and alleges that its purpose in approving said act was to reduce frauds in the sale and handling of leaf tobacco, and respondent denies any other purpose whatsoever. Your respondent denies that the requirements of said act are severe and destructive or in any case impossible, or that any of the requirements of said act will destroy the legitimate business of complainant or deprive it of any of its liberty or rights or property without due process of law, or denies to complainant equal protection of law, or that the said act in any way violates the fourteenth amendment of the Constitution of the United States, or sections 1 and 2, of Article I, of the Constitution of Virginia, or violates any part or provision of the Constitution of the United States or of the Constitution of Virginia.

"In further answer to the allegations of the bill regarding the operation or prospective operation of said statute, respondent alleges and says that the passage of said statute was a proper exercise of the police power resident in the legislature of Virginia; that under said statute there exists equal protection of the laws for all parties."

Further, the answer alleges:

"The respondent denies that the real character of the act is in any way concealed, is under any false guise, or that the legislature of Virginia has been persuaded or could be persuaded to pass a statute concealing its real nature, its real purpose, and containing a false statement as to its purpose, as complainant alleges. Your respondent denies that the act purports or results in employing complainant's business and its agents to discover or to bring to an accounting the members of your respondent association. It is alleged, as set forth hereinbefore in this answer, that the act as passed by an overwhelming majority of the legislature of this Commonwealth speaks the truth, sets forth its purpose and is intended to and does prevent and reduce frauds in the handling of leaf tobacco."

Also:

"Your respondent denies that through its agents or through any person or in any way it is attempting to enforce against your orator any unlawful requirements of said statute; denies that any of the requirements of said statute are unlawful; denies that it is threatening to institute against your complainant a multiplicity of prosecutions; alleges that your orator is not attempting and does not intend to attempt to comply with any of the provisions and requirements of said statute; alleges that your orator has deliberately and with knowledge violated the provisions of said statute. It

is alleged that the said statute which imposes justifiable burdens and obligations upon your respondent also protects your respondent against frauds by its members, and it is admitted that your respondent, which is observing this statute, proposes and intends to insist that its rights be protected by the observance of said statute by other parties, including complainant."

The answer further states:

"It is denied that complainant will be harassed continually and indefinitely with any unjustifiable prosecutions under the said act, or that there will be any multiplicity of suits, actions or prosecutions. It is denied that complainant is entitled to any relief in equity, but it is alleged that it is the duty and the obligation of complainant to comply with the statute as enacted by the legislature of this Commonwealth, and that any person may properly and justifiably cause complainant to be prosecuted for deliberate and wilful violations of said statute. It is further alleged that complainant has complete protection at law against any abuses or any improper prosecutions by any person."

And further:

"Your respondent alleges that only two warrants were sworn out against complainant, and each of the two charged a separate and distinct offense; these warrants were sworn out before Hon. Harry Wooding, mayor of the city of Danville, and defendant's attorney moved a continuance until November 10, 1923, but a continuance was granted until November 3, 1923, and in the meantime application was made to your honor for a restraining order.

"Your respondent alleges that if said law is unconstitutional as alleged, then the remedy of complainant could be obtained by defense to said warrants in the

said mayor's court and should an adverse decision be rendered then the complainant has the right to appeal as of right to the corporation court, where the constitutionality of the statute could be decided by motion to quash the warrant, demurrer thereto—all the other methods provided by law, and in the meantime the complainant could not be required to pay one cent of fine until the said act of Assembly was declared valid and the guilt of complainant established beyond a reasonable doubt. And if complainant made its defense at law the case could have been tried as speedily as by injunction proceedings, for appealed warrants are tried the first day of your honor's court; therefore, respondent alleges that complainant has a speedy, adequate and complete remedy at law which deprives a court of equity of all jurisdiction."

At the following term of the court, on November 14, 1923, the case was heard upon the motion of the defendants to dissolve the temporary injunction, upon the bill and exhibits and the answers and several affidavits filed for the defendants; and, after argument, the court dissolved the injunction, the order stating that the court was of opinion that the act complained of was valid legislation. The court, considering that this disposed of the real matter at issue, dissolved the injunction and dismissed the bill at the costs of the complainant.

On the 7th day of December, 1923, the court heard a motion by the complainant to declare the decree of November 14th, so far as it dismissed the bill, to be void on the ground that it was premature; upon which motion the court entered an order concluding as follows:

"On consideration whereof, the court being of the same opinion as expressed in said decree of November

14, 1923, doth now at this time dismiss the said bill and order complainant to pay the costs of this suit."

Thereupon the said complainant obtained an appeal from the Supreme Court of Appeals.

*Meade & Meade* and *R. E. Scott*, for the appellant.

*John W. Carter, Jr., Harry Wooding, Jr.,* and *W. T. Joyner*, for the appellee.

CRUMP, P., after making the foregoing statement, delivered the following opinion of the court.

In the petition for the writ of appeal the appellant made the following assignments of error:

"Your petitioner is advised and charges that the learned court below erred in the following particulars in the decrees above mentioned:

"1. In entering the decree of November 14, 1923, dissolving the injunction theretofore awarded, and dismissing the bill of your petitioner.

"2. In entering the decree of December 7, 1923, confirming the decree of November 14, 1923, and in refusing at that time to reinstate the injunction theretofore awarded, and refusing to perpetuate the same.

"3. The learned court below erred in holding the act of the General Assembly of Virginia complained of valid and constitutional.

"4. The learned court below especially erred in not holding the said act unconstitutional, null and void, among other things for the following reasons:

"(a) Because said act, as enforced and threatened to be enforced, deprived and will deprive your petitioner of his property without due process of law.

"Because he is thereby deprived of the equal pro-

tection of the law and subject to an unreasonable search and seizure, contrary to the provisions of the Constitution of the United States, especially the fourteenth and fifteenth amendments thereto, which are hereby invoked by the petitioner for his protection in the premises.

"(b) Because the said act is special legislation regulating and undertaking to regulate labor, trade, mining and manufacturing, and the effect thereof is. to grant to a private corporation, association, or individual special and exclusive rights, privileges and immunities, contrary to the provisions of Article IV,. section 63, of the Constitution of Virginia.

"(c) Because it undertakes to authorize and does. authorize the officers, agents and servants of a private corporation, association, and other individuals the right to search the premises of the petitioner without justification or warrant, and amounts to a general search warrant so far as your petitioner's premises are concerned, contrary to section 10 of the Constitution of Virginia and the statute in such cases made and' provided.

"5. The learned court below erred in not granting the petitioner the relief prayed for in its bill of complaint, and especially in not perpetuating the preliminary injunction awarded it on the first presentation. of its bill of complaint."

An appeal and supersedeas was awarded in this case on January 30, 1924. About the same time a writ of error was awarded by the Supreme Court of Appeals of Virginia in two criminal cases under the style of *Reaves Warehouse Corporation* v. *Commonwealth*, 141 Va. 194, 126 S. E. 87, and *Motley, et al.* v. *Commonwealth*, 141 Va. 194, 126 S. E. 87. The opinion of the court was rendered in these cases, which were heard

together, on January 25, 1925, before the instant case was argued and submitted.

After a careful examination of all the proceedings in the record now before the court, we are of the opinion that the decision in the two cases just mentioned covers all the objections raised by the appellant to the enforcement of the act in the instant case, and therefore renders it unnecessary for this court now to dwell at length upon the points made by the appellant. The opinion in the two criminal cases is reported in 141 Va. 194, 126 S. E. 87.

[1] The warehouse system of selling tobacco at auction has been in vogue in Virginia for many years past and has assumed great proportions, as Virginia is a large producer of tobacco. It may doubtless be stated that practically during quite recent years the entire crop of leaf tobacco in Virginia has been marketed either by the warhousemen or by the Tobacco Growers' Co-operative Association. The warehousemen, upon the appearance of this competitor in the business of selling tobacco for the producers, naturally were put upon the defensive, and while it is true that the provisions of the act complained of are applicable to both warehousemen and co-operative associations, yet it was argued in the two cases of criminal appeal and also in this case that the motive and effect of the act is to promote the business of the co-operative association and to injure that of the warehousemen. A large portion of the bill in the instant case is taken up with allegations and arguments as to these matters, and the answer of the association contains quite an array of statements in defense of its motives and dealings.

As to these matters it need only be stated that they raise solely questions of public propriety and advantage, the determination of which belongs exclusively to the

legislative department of the government and present no questions for judicial decision by a court.

[2, 3] In the opinion rendered by Judge Prentis in the *Reaves* and *Motley Cases,* he shows that from early colonial days and on through the history of the Commonwealth it has been the policy of the State to regulate the business of conducting tobacco warehouses by legislation; that tobacco warehouses are affected with a public interest and are subject to public regulation; that the act in question here belongs to that class of legislation and therefore clearly comes within the police power of the State. Judge Prentis says:

"There is much in the briefs as to the wisdom, expediency, justice, or injustice of this particular statute, but these are questions to be determined by the General Assembly, not by this court."

The three reasons given by the appellant as grounds for the unconstitutionality of the act are all dealt with in the opinion of Judge Prentis. As to the reason under (a), Judge Prentis says:

"What the statute requires is that one who delivers leaf tobacco to a warehouse shall tell the truth, while the burden put upon the warehouseman is that of disclosing this truth. It is conceded that it has long been a customary practice of the warehousemen in this State and elsewhere, and for the purpose of identifying tobacco, to place the name of the owner thereof upon the tobacco so brought to the warehouse for sale at auction. We assume that this practice is for their own protection. When one delivers tobacco to a warehouse for sale and refuses to give his name, or gives a fictitious name, or refuses to disclose the facts required by the act, his purpose must be construed to be sinister, and there is a fair inference that he designs to accomplish some fraud upon his landlord, his credi-

tor, or some other to whom he is under obligation to deliver his tobacco.

"In the *Motley Case* it is shown that, knowing the producer of the tobacco and having as a dealer bought it, the warehouseman placed a fictitious name, George Cox, on it. Quoting from the brief of counsel for Motley: 'The plaintiffs in error, being the owners of this pile of tobacco and intending to resell the same, placed a ticket on it bearing a fictitious name as is the universal custom in such cases, in order that the tobacco might be sold on its *merit* and without prejudice, because it had been bought in and was owned by the plaintiffs in error. This information was voluntarily given by the plaintiffs in error to an "inspector" employed by the association, who was "in their house that day" in the discharge, as he admitted, of his "special duty" to "try to stop violations of the contract," and to "see that this 1923 law was complied with.' "

"The statute was adopted to prevent fraud, and if there had been a universal custom of warehousemen to indulge in such subterfuges whereby frauds were promoted, then it is manifest that the occasion had arisen for the State to intervene to prevent them. It is said by the learned counsel for the warehousemen that it is 'pertinent and proper for the court in this case to inquire into the true purpose of the act in question and ascertain whether it is a valid exercise of the police power of the State, or whether it is in reality "an arbitrary interference with private business," or whether it imposes "unusual and unnecessary restrictions" upon a lawful occupation, or "invades property rights.' " Responding to those inquiries, we have no doubt whatever that it is a valid exercise of the police power; that it is not an arbitrary interference with private business; indeed the statute recognizes and

accommodates itself to the customary methods of such business, namely, the identification of the specific piles of tobacco by the name of the true owner. That this invades no property rights is apparent."

[4] As to the reason assigned by the appellant under (b), the court holds, on page 209 of 141 Va., 92 of 126 S. E., *supra*, that, in addition, the provisions of section 63 of the State Constitution are not violated by the act in question; that this statute applies throughout the State to all persons and property within the classes specified, and that the classification is reasonable and not arbitrary, and therefore the statute is not special, but general.

[5] As to the contention that the act is unconstitutional upon the ground assigned in (c), this is overruled by Judge Prentis in the followin ꞏ language:

"It is said that the act violates the fourth amendment of the Federal Constitution and section 10 of the Virginia Bill of Rights, prohibiting general search warrants. We are unable to appreciate this point. We find nothing in the act about general search warrants. It requires the placing of tags upon the several piles of tobacco by the warehouseman, identifying the owner and the grower, so far as is possible. The warehousemen conduct public auction sales, and this, of course, implies that all who will may come. To say that any special privilege is conferred upon those who are expressly permitted to read these tags, when it is obvious that any one who goes may also read them, appears to be a contradiction in terms. By the habit and custom of the business similar information is accessible to all because they can read as they run. The additional permission to examine these tags for ten days thereafter makes more effective a regulation which is reasonable and is not a general search war-

rant, is within the police power of the State for the preservation of the substantial rights of all interested, and constitutes no appreciable hardship upon the warehouseman."

[6] In dealing specifically with the criminal charges against the two parties, Judge Prentis says with reference to the *Motley Case:*

"The proof here is that the false name of George Cox was put upon this pile of tobacco deliberately. If the proviso should be construed in accordance with this contention, the whole purpose of the act will be defeated and its requirements easily evaded. The true construction of this act, considered in its entirety, requires frankness and publicity of the warehouseman at all stages of the transaction, and he cannot escape those requirements simply because he is likewise a dealer. The obligations so clearly imposed upon the warehouseman as such cannot be thus evaded."

And as to the *Reaves Case* he says:

"In the *Reaves Case* it is shown that an agent of the Co-operative Association was denied permission to read the tags upon the piles of tobacco in the warehouse being offered for sale. That this is a clear violation of the statute which we hold to be valid has already been sufficiently indicated."

In view of the luminous and exhaustive opinion of Judge Prentis, in which practically all the provisions of the act in question are upheld as constitutional and valid, this court is absolved from undertaking to discuss and pass upon those questions so ably and definitely dealt with by Judge Prentis, and it would be useless for us to endeavor to do so.

[7] It is manifest from the pleadings in the case that all the grounds of complaint made by the complainant rest finally upon the constitutionality and validity of

the legislation in question. The act being valid, the complaint that the defendant and its agents in complying with the provisions of the act were unlawfully and without warrant interfering with and injuring the business of the complainant is necessarily without support. This court cannot in any way undertake to pass upon the necessity for the legislation, or whether or not its stringent provisions were brought about by frauds committed in the past, or were essential to prevent such frauds in the future. The judicial tribunal can only assume that these matters, which rest in the discretion of the General Assembly, were thoroughly investigated and legislation of this character found necessary as a matter of legislative expediency, and justice and right in the interest of the people at large.

[8] In the first and second assignments of error, complaint is made of the action of the court in entering the decree of November 14, 1923, and the final decree of December 7, 1923, dissolving the injunction and dismissing the bill. We take it from the record that the decree of December 7th was entered after the answers had been filed and the case docketed and ready for hearing. It is insisted on behalf of the appellants that the court should not have dismissed the bill after holding the act to be valid, but should have continued the case on the docket for a final hearing after evidence had been taken on the part of the complainant.

Without passing upon the question whether or not the bill in this case is a pure bill for injunction, we are of opinion that under the circumstances appearing in the record the action of the court was natural and proper. A careful reading of the pleadings discloses that if the act itself was valid and constitutional, then unquestionably all the complaints made in the bill against the defendants necessarily fell to the ground.

The prayer of the bill asks, as usual, that the defend-
ants be required to answer and that they "may be
enjoined and restrained from prosecuting your orator
under the provisions of the said act of the Virginia
Assembly at its extra session of 1923, set forth in
chapter 109 thereof, until the constitutionality and
validity of said act can be finally adjudicated and
determined by your honor; that your honor may
decide, and finally adjudicate, whether or not your
orator is subject to prosecution for failure to comply
with any and all the provisions of said act; and if said
act is invalid, that said defendant, its agents, attorneys
and employees, the said Honorable John W. Carter,
Jr., Commonwealth's attorney for the city of Danville,
the Honorable Harry Wooding, mayor of the city of
Danville, and all other persons, may be perpetually
restrained from suing and prosecuting it under the
provisions of said act; that proper process may issue,
and that all other relief may be granted to your orator
which to equity may seem meet and proper and which
the particular circumstances of its case may deserve."

Whether or not the business of the complainant
was injured by the passage of the act, and by the en-
suing mandate of the law that the complainant should
comply with the provisions of the act, are questions
that become immaterial upon the holding by the court
that the act was constitutional and valid; and, there-
fore, the taking of evidence upon such subjects was
entirely immaterial and could not have altered the final
determination of the case. Therefore, when the court
a second time declared the act to be valid, the injunc-
tion awarded necessarily fell and the power to grant
relief contrary to the provisions of the act no longer
existed. Hence there was no reason why the court
should not terminate the litigation upon its adjudica--

tion of the fundamental question presented to it, and upon which the whole case turned, and we think there was no error to the prejudice of the appellant in the final decree entered by the court on the 7th of December, 1923.

For these reasons we see no error in the ruling and decree of the trial court, and it follows that the final decree of December 7, 1923, is affirmed.

*Affirmed.*