NATHAN MAYO, as Commissioner of Agriculture, v. THE POLK COMPANY.

169 So. 41.

Division B.

Opinion Filed June 15, 1936.

*Cary D. Landis,* Attorney General, *H. E. Carter* and

*James B. Watson,* Assistant Attorneys General, *Mabry, Reaves, Carlton & White, Zewadski & Pierce,* and *E. G. Grimes,* for Appellant;

*Robert T. Dewell, George C. Bedell* and *Chester Bedell,* for Appellee.

TERRELL, J.—The Legislature of 1935 enacted Chapter 16860, Laws of Florida, relating to the purchase, sale, and handling of citrus fruits and providing for the licensing and bonding of citrus fruit dealers. Appellee, as complainant, instituted this suit in the Circuit Court of Leon County, the bill of complaint praying that appellant who was named as defendant be restrained from enforcing the provisions of the said Act against it. A temporary injunction as prayed for was granted. A motion to vacate and a motion to dismiss the bill of complaint were denied and from both orders this appeal was prosecuted.

The first question urged is whether or not the licensing and bonding provisions of Sections two and three, Chapter 16860, Acts of 1935, can be enforced against appellee and others who are engaged exclusively in the business of canning, preserving, and marketing in sealed containers the edible portions of grapefruit grown or purchased outright and not consigned for canning, processing, and sale.

Appellee contends that this question must be answered in the negative because the title to Chapter 16860 is not sufficient under Section Sixteen of Article Three of the State Constitution to cover those engaged exclusively in the business of canning, preserving, and marketing the edible portions of grapefruit grown or purchased outright, and not consigned for canning, processing, and sale.

The title of Chapter 16860, Acts of 1935, is as follows:

"AN ACT relating to the purchase, handling, sale, and accounting of sales of citrus fruit grown in the State of Florida; to prevent fraud and deception therein; to provide

for the licensing and bonding of citrus fruit dealers; to prescribe certain powers and duties of the Commissioner of Agriculture of the State of Florida in the administration and enforcement of this Act; and to prescribe penalties for the violations of the provisions of this Act."

The terms "dealer" and "citrus fruit dealer" are defined in Section one of the Act and are as follows:

"The term 'dealer' means and includes every person other than a producer, consignor, commission merchant, consignment shipper, cash buyer, broker, or agent who in any manner makes or attempts to make money or any other thing of value on any citrus fruit by dealing in the same in any manner whatsoever.

"The term 'citrus fruit dealer' means and includes every consignor, commission merchant, consignment shipper, cash buyer, broker, agent, association, co-operative association, and dealer, as hereinabove defined."

Section Sixteen of Article Three requires that each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title. The test by which it may be determined whether the title of an Act meets this requirement is met if its verbiage is sufficient to put one on notice and cause him to enquire into and ascertain the contents of the body of the Act. If it does this it is sufficient to correct the vice that Section Sixteen of Article Three was designed to cure. State, ex rel. Moodie, v. Bryan, 50 Fla. 293, 39 So. 929; Ex Parte Pricha, 70 Fla. 265, 70 So. 406.

Measured by this rule and others equally as familiar but unnecessary to burden this opinion with, the title to Chapter 16860 was ample. The appellee was not a "producer, consignor, commission merchant, consignment shipper, cash buyer, broker, or agent" as contemplated by the term "citrus

fruit dealer," but it was attempting to make money out of grapefruit by canning, preserving, and marketing the edible portion thereof in sealed containers. It was consequently a "dealer" as defined by Section one as here quoted.

But the appellee contends that the words " dealer" and "citrus fruit dealer" as referred to and defined in the Act must be applied in their ordinary or current use and that the Legislature cannot by definition extend their meaning beyond that generally attributed to them. Appellee in other words contends that the maxim, *expressio unius est exclusio alterius,* is applicable and should control in applying the title to the body of the Act under review.

The expression of one thing is the exclusion of another is a sound rule of construction as applied to Acts of the Legislature, but it has no application to the title of an Act. Goetz v. Smith, 152 Tenn. 451, 278 S. W. 417; Doeppen-schmidt v. International & G. N. R. Co., 100 Tex. 532, 101 S. W. 1080. It is quite true that the words "dealer" or "citrus fruit dealer" are terms of common usage and well understood meaning, but it is also true that it is competent for the Legislature to expand or contract the implication of these terms within their permissible meaning. *In re:* Ortiz's Estate, 31 N. M. 427, 246 Pac. 908; Wright v. Fulton County, 169 Ga. 354, 150 S. E. 262; Lloyd Garretson Co. v. Robinson, 178 Wash. 601, 35 Pac. (2d) 505; State, *ex rel.* Olsen, v. Board of Control of State Institutions, 85 Minn. 165, 88 N. W. 533. The definition attributed to "dealers" and "citrus fruit dealers" by Chapter 16860 was well within the rule applied in these cases.

In all cases where the constitutionality of an Act turns on the interpretation of the title the latter should be construed liberally if necessary to uphold the Act, but in this case we do not have to resort to that canon of construction. One engaged in the business of canning, preserving, processing,

and marketing the edible portion of grapefruit for profit is certainly within the permissible use of the phrase "citrus fruit dealer" as used and defined by the Act brought in question.

The answer thus given to question one necessarily answers question two contrary to the contention of appellee, the import of question two being that the licensing and bonding provisions of Sections two and three, Chapter 16860, have no application to appellee and others in like situation. This contention is grounded on the further contention that Chapter 16860 indicates a purpose to regulate only the business of those dealing in citrus fruit for the account of others and that it neither expresses nor infers a purpose to regulate those engaged in canning, preserving, and marketing the edible portion of grapefruit grown or purchased by the canner or processor and not consigned to him or them for canning, processing, and sale.

We have given due consideration to the argument of appellee on this point, but the test of whether or not one is a dealer as contemplated by the Act is whether he makes or attempts to make money or something of value by dealing in citrus fruits "in any manner whatsoever." It seems inescapable that anyone processing citrus fruit or purchasing that of another for a like purpose for profit and not embraced within the exceptions named would be a dealer as contemplated by the Act and being so would be required to secure the license and post the required bond with the Commissioner of Agriculture.

It is next contended that if Chapter 16860 is valid in that it requires appellee to secure the license and post the bond with the Commissioner of Agriculture, then it is violative of Sections One and Twelve, Declaration of Rights, Constitution of Florida, and the Fourteenth Amendment to the Federal Constitution, in that it unduly limits appellee's

power to contract. To support this contention appellee relies on Riley v. Sweat, 110 Fla. 362, 149 So. 48; and State v. Old Tavern Farm, Inc., 133 Me. 468, 180 Atl. 473.

Riley against Sweat was an habeas corpus proceeding in which it was shown that the petitioner had tried repeatedly but had been unable to make the required bond. This Court held that under such circumstances failure and inability to make the bond required amounted to a prohibition to engage in the business attempted to be regulated.

The Act under review is one of a series enacted at the 1935 session of the Legislature for the promotion and protection of the citrus fruit industry. The citrus fruit industry is one of the dominant businesses of the State and the requirement of Chapter 16860, that dealers therein be required to give a license and post a bond with the Commissioner of Agriculture conditioned on compliance with the Act and all contracts made with the producers, was in aid of stabilizing and as far as possible removing the element of chance and uncertainty from that business. The fact that it attempted to secure to producers a due return for their product is secondary, but since the hazards to them during the long period of production and disposition are so numerous it should not be condemned for this reason.

The method of growing and marketing a citrus fruit crop is fraught with hazards not peculiar to any other fruit crop. The period of growing and marketing from the bloom is from ten to eighteen months. The crop is grown, packed, and marketed in different places, by different people, and under different circumstances. Fires, freezes, and other destructive agencies may intervene over which the grower has no control. It often becomes advantageous to bargain for packing and sale months in advance of maturity. These and other contingencies are accompanied by hazards sin-

gular to the citrus fruit industry that amply justify the provisions of the Act complained of.

The bond required is based on the number of standard boxes of citrus fruits handled by the dealer, that is to say, on the basis of ten dollars for each one thousand boxes handled, the minimum bond permitted being one hundred dollars and the maximum bond required being five thousand dollars. It is not shown that appellee ever applied for or attempted to make a bond within these limits or that the posting of such a bond would impose any undue burden on it.

The fact that a single industry is singled out for regulation is not material. Legislative classification for this purpose may rest on narrow distinctions. Such legislation is grounded on the existence of some evil or evils to be corrected and the Legislature is generally the judge as to whether they exist and the necessity for their correction. The Act will not be held invalid merely because it fails to regulate all businesses even though they be similar in nature. Discriminations that are subject to resistance are those in which persons engaged in the same business are regulated differently or are granted different privileges under similar conditions. The rule is general that the Legislature may constitute classes for the purpose of police regulation if there is no discrimination among those similarly situated and there is otherwise a reasonable basis for the classification. Because of the hazards and other circumstances affecting the citrus fruit industry we have reached the conclusion that the regulation and classification complained of was within the power of the Legislature to make. Cahoon v. Smith, 99 Fla. 1174, 128 So. 632 (Reversed for other reasons 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264) ; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361 ; State v. Walter Bowen & Co., 86 Wash. 23, 149 Pac.

330; Northern Cedar Co. v. French, 131 Wash. 394, 230 Pac. 837.

This Court is committed to the doctrine that the citrus fruit industry is of such proportions and is affected by a public interest to such an extent as to be within the police power of the State. Johnson v. State, *ex rel.* Maxcy, 99 Fla. 1311, 128 So. 853; Maxcy v. Mayo, 103 Fla. 552, 139 So. 121. All personal and property rights are held subject to the police power of the State and neither the Fourteenth Amendment nor corresponding provisions of the State Constitution will intercept the regular and lawful exercise of this power.

We do not retract what was said in Riley v. Sweat on liberty of property and contract as protected by the Fourteenth Amendment, but there is no such thing as absolute liberty of property and contract. The right to contract and the right to own property are held subject to reasonable regulation in the interest of the public and the more complex society becomes the wider and more varied these rights must be modified by the police power.

The following cases are relied on by appellant. They have been examined and some of them rule the identical point raised here. Others are persuasive. Payne v. Kansas, *ex rel.* Brewster (Kan.), 158 Pac. 408, 248 U. S. 112, 39 Sup. Ct. 32, 63 L. Ed. 153; State v. Walter Bowen & Co., 86 Wash. 23, 149 Pac. 330; State, *ex rel.* Beek, v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134; Reaves Warehouse Corporation v. Commonwealth, 141 Va. 194, 126 S. E. 87, Danville Warehouse Co. v. Tobacco Growers' Co-op. Ass'n, 143 Va. 741, 129 S. E. 739; Liberty Warehouse Co. v. Burley Tobacco Growers' Co-op. Ass'n, 208 Ky. 643, 271 S. W. 695; Ferguson-Hendrix Co. v. Fidelity & Deposit Co. of Maryland, 79 Wash. 528, 140 Pac. 700.

It follows that the judgment below must be and is hereby reversed.

Reversed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.