Mr. Randy Miller Executive Director Department of Revenue Carlton Building Tallahassee, Florida 32301
Dear Mr. Miller:
You requested my opinion on the following questions:
 1. IS HYDROGEN SULFIDE TAXABLE UNDER PART I OF CH. 211, F.S., AS IMPOSED IN SECTION 211.02, FLORIDA STATUTES?
 2. IS HYDROGEN SULFIDE TAXABLE UNDER PART II OF CH. 211, F.S., AS IMPOSED IN SECTION 211.31, F.S.?
The first question should, in my opinion, be answered in the affirmative under the provisions of Part I, Ch. 211, F.S., In view of an affirmative response to the first question, your second question need not be considered.
You indicated in your letter and the accompanying material that "[h]ydrogen sulphide is not contained in the soils or waters of this state as a solid mineral. It is contained as a gas. It is not produced, or `severed' as a `solid mineral.' It is not the same molecular structure as sulphur." (e.s.) Hydrogen sulfide is defined as "H sub2 S flammable, toxic, colorless gas with an offensive odor, boiling at -60~ C.; soluble in water and alcohol; used as an analytical reagent, as a sulfur source and for purification of hydrochloric and sulfuric acids." McGraw Hill's Dictionary of Scientific and Technical Terms 779 (3rd ed. 1984). See also, Webster's New Collegiate Dictionary 560 (Rev. ed. 1976).
The supplemental material accompanying your request further indicates that sulfur is manufactured from hydrogen sulfide through a means of a chemical reaction in the presence of a catalyst, and the conversion of hydrogen sulfide to sulfur is more like the manufacture of motor gasoline from crude than it is to the extraction of liquified hydrocarbon from separator gas; the sulfur so manufactured is sold as a disparate product.
Section 211.02(1). F.S., imposing a tax on the production or severance of gas or oil, in relevant part provides:
 There is hereby levied, to be collected hereafter, as provided herein, an excise tax upon every person engaging or continuing within this state in the business of producing or severing oil or gas, as defined herein, from the soil or water for sale, transport, storage, or profit or for commercial use. (e.s.)
Section 211.01, F.S., in the first paragraph provides:
 Whenever used in this chapter, the following words and terms shall have the definition and the meaning ascribed to them in this section, unless the intention to give a more limited meaning is disclosed by the context[.] (e.s.)
Thus, the Legislature has set the parameters to be used in interpreting the definitions set forth in s 211.01, F.S., for the purposes of Ch. 211.
Section 211.01(6), F.S., defines the word "gas" as follows:
 The word "gas" means all natural gas, including casinghead gas, and all other hydrocarbons not defined as oil in subsection (5) above. (e.s.)
Section 211.01(5), F.S., defines the word "oil" as follows:
 The word "oil" means crude petroleum oil and other hydrocarbons, regardless of gravity, which are produced at the well in liquid form by ordinary production methods, and which are not the results of condensation of gas after it leaves the reservoir.
The issue which must now be addressed is what the Legislature meant when it said "all natural gas," as it is used in s211.01(6), F.S., remembering the legislative admonishment contained in the first paragraph of s 211.01.
It must not be forgotten that statutes must be given their plain and obvious meaning. Fixel v. Clevenger, 285 So.2d 687 (3 D.C.A. Fla., 1973). Furthermore, it is a general rule that one should give words in the statutes the meaning accorded them in common usage unless a different connotation is expressed in or necessarily implied from the context of the statute. Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950); Pederson v. Green, 105 So.2d 1
(Fla. 1958). When a word has both a popular and a technical meaning, the court will give it effect according to the popular signification if it was so used by the Legislature. Southern Bell Telephone Teleg. Co. v. D'Alemberte, 21 So. 570, 572 (Fla. 1897). It is also true that it is competent for the Legislature to expand or contract the implication of words within their permissive meaning. Mayo v. Polk County, 169 So. 41 (Fla. 1936).
According to Webster's New Collegiate Dictionary 765 (Rev. ed. 1976), "natural gas" is defined as follows:
 Gas issuing from the earth's crust through natural openings or bored wells; esp: a combustible mixture of methane and higher hydrocarbons used chiefly as a fuel and raw material.
See also, The Random House Dictionary of the English Language 953 (Unabridged ed. 1967) (combustible gas formed naturally in the earth, as in regions yielding petroleum).
However, the Legislature did not limit the word gas to only hydrocarbons. It specifically stated that the word gas means all natural gas including casinghead gas and all other hydrocarbons not defined as oil. The word "includes" is usually a term of enlargement not of limitation and therefore conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes. Argosy Limited v. Hennigan,404 F.2d 14 (5th Cir. 1968); see also, 42 C.J.S. Include at p. 525; Id., Including at 526. The word "all" being used as an adjective to modify the noun "natural gas" means the whole amount or quantity of. Webster's New Collegiate Dictionary 29 (Rev. ed. 1976). If the definition of "natural gas" was not all inclusive, i.e., including hydrocarbons and non-hydrocarbons or a mixture thereof, the statute would have been limited or have referred only to all hydrocarbons not defined as oil.
Such an interpretation is consistent with the scientific and technical meaning of "natural gas," which is defined in McGraw-Hill's Dictionary of Scientific and Technical Terms 1065 (3rd ed. 1984), as:
 A combustible, gaseous mixture of low molecule-weight, paraffin hydrocarbons, generated below the surface of the earth; contains mostly methane and ethane with small amounts of propane, butane and hydrocarbons, and sometimes nitrogen, carbon dioxide, hydrogen sulfide and helium.
Likewise such a statutory interpretation is consistent with various court decisions involving the same or similar definitional problems with oil and gas leases. See e.g., Lone Star Gas Company v. Stine, 41 S.W.2d 48 (Texas, 1931); Scott Paper Company v. Taslog, Inc., 638 F.2d 790 (5th Cir. Ct. of App., 1981); Navajo Tribe of Indians v. United States, 364 F.2d 320 (U.S.Ct. of Cl., 1966); Northern Natural Gas Company v. Grounds, 441 F.2d 704 (10th Cir. Ct. of App., 1971).
The inescapable conclusion is that the legislative intent was to impose an excise tax on the production or severance of gas consisting of all of the constituent elements or mixtures of hydrocarbons and non-hydrocarbons of the gas stream produced, and not merely the hydrocarbon elements thereof.
In summary, until legislatively determined otherwise, it is my opinion that the tax on the production or severance of gas levied by s 211.02(1), F.S., applies to hydrogen sulfide.
Sincerely,
Jim Smith Attorney General
Prepared by:
Joseph C. Mellichamp, III Assistant Attorney General