NATHAN MAYO, as Commissioner of Agriculture, *et al.*, v. THE TEXAS COMPANY, a Delaware Corporation.

188 So. 206.
En Banc.
Opinion Filed April 14, 1939.

George Couper Gibbs, Attorney General, *Tyrus A. Norwood,* Assistant Attorney General, and *Wm. C. Pierce,* for Appellants.

*Evans, Mershon & Sawyer, M. L. Mershon* and *W. O. Mehrtens,* for Appellee.

PER CURIAM.—This case presents for determination the question of the constitutionality of Chapter 7905, Laws of Florida, Acts of 1919, being Sections 3956 to 3972, C. G. L., inclusive. The following portions pertinent to a decision of this case are Sections 3956, 3962 and 3970, C. G. L., viz.:

"3956. Gasoline and Oil to be Inspected.—For the purpose of this Chapter all gasoline, naphtha, kerosene, benzine, or other like products of petroleum under whatever name designated used for illuminating, heating, cooking or power purposes, sold, offered or exposed for sale in this State, shall be subject to inspection and analysis as hereinafter provided. All manufacturers, wholesalers and jobbers, before selling or offering for sale in this State, any gasoline, kerosene or other mineral oil for power, illuminating, cooking or heating purposes, shall file with the Commissioner of Agriculture an affidavit that they desire to do business in this State, and shall furnish the name, brand, or trade mark of the oil or oils, which they desire to sell, together with the name and address of the manufacturer thereof, and that such oil or oils are in conformity with the standard prescribed by the Commissioner of Agriculture.

"3962. Duty of Manufacturers, Etc., of Gasoline and Oil.—All such oils as hereinbefore enumerated and designated that are used or intended to be used for power, illuminating, cooking or heating purposes, when sold under a distinctive name that shall fall below the standard fixed by the Commissioner of Agriculture, are hereby declared to be illegal, and shall be subject to confiscation and sale by order of the Commissioner of Agriculture. It is hereby made the duty of all manufacturers, wholesalers and jobbers and distributors who sell, barter or exchange gasoline or other oils within this State, to post conspicuously at the place of delivery to the consumer a card or sign not smaller than 12x15 inches, setting forth in size type not smaller than one inch in height, in the English language, the degree of gravity of the product sold, offered or exposed for sale.

"3970. Rules and Regulations.—The Commissioner of Agriculture shall promulgate such rules and regulations

not inconsistent with the provisions hereof as in his judgment may be necessary to the proper enforcement of this Chapter; and define and fix the standards and specifications for all the oils and gases referred to in Section 3956; such standards and specifications to be fixed before any of such oils and gases shall be sold or otherwise dispensed in this State."

It is claimed that Sections 6 and 14 of Chapter 7905, *supra*, being Sections 3962 and 3970 C. G. L., are each invalid upon the grounds of unconstitutional delegation of legislative power in the Commissioner of Agriculture; that the rules and regulations defining and fixing standards were not previously approved by the Commissioner of Agriculture as required by the above quoted statutes; that the statutes, *supra*, do not give the Commissioner of Agriculture power to make rules and regulations prohibiting the blending of different grades of gasoline thereby bringing the finished product up to the standard requirements. The Commissioner of Agriculture, acting under Chapter 7905, *supra*, through his inspectors, seized 5500 gallons of "Fire Chief" gasoline situated in a storage tank of the plaintiff below at Homestead, Florida. It was claimed that the gasoline seized had been adulterated with kerosene or some other high boiling petroleum product, and that the gasoline seized failed to meet the specifications prescribed by the Commissioner of Agriculture and that it would be a fraud to allow this gasoline to be sold within the State of Florida.

The Chancellor below held that the statute was unconstitutional, invalid, and unenforceable because: (a) the Commissioner of Agriculture had not been authorized to promulgate rules and regulations of a legislative character; (b) the Commissioner of Agriculture was performing a legitimate executive function by charging a violation of the rules and regulations; (c) the Commissioner of Agriculture

attempted to decide and determine the fact of the violation of the rules which was a judicial function.

It will be observed that Section 1 of Chapter 7905, *supra,* being Section 3956 C. G. L., requires manufacturers, wholesalers and jobbers selling gasoline in Florida to file with the Commissioner of Agriculture an affidavit setting out that they desired to transact business in Florida, and in the affidavit should furnish the name, brand, or trade mark of the oil which they desired to sell, with the name and address of the manufacturer thereof; and it should be made further to appear that the oils desired to be sold on the part of the manufacturer in Florida should conform with the standards prescribed by the Commissioner of Agriculture. Likewise, Section 6 of Chapter 7905, *supra,* being Section 3962 C. G. L., requires that when the oil is sold under a distinctive name and falls below the standards fixed by the Commissioner of Agriculture, the gasoline sold or offered for sale, below the standard so fixed, shall be declared an unlawful commodity and then it becomes the duty of the Commissioner of Agriculture to enter an order confiscating and to sell the illegal products so seized found to be below the standard prescribed by the rules and regulations of the Commissioner of Agriculture. The Act requires distributors of gasoline or oil in Florida to post in a conspicuous place where the gasoline or oil is delivered to the consumer a card or sign showing the degree of gravity of the product sold or offered for sale. Section 14 of Chapter 7905, *supra,* being Section 3970 C. G. L. grants to the Commissioner of Agriculture power to make rules and regulations necessary to the proper enforcement of the Act and to define and fix the standards and specifications of oils and gases and that the oils and gases shall not be sold in Florida until their standards and specifications have been promulgated by the Commissioner of Agriculture.

This Court has held by a long line of decisions that the law-making power, in the enactment of a statute, contemplates a valid and constitutional Act and that the burden of proof is on the party asserting the unconstitutionality of an Act; and said Act is invalid and that the statute is in conflict with some designated provision of the Constitution. See Neisel v. Moran, 80 Fla. 98, 85 So. 346; State, *ex rel.* Davis, v. Rose, 97 Fla. 710, 122 So. 225. It is likewise the duty of this Court, in deference to the legislative department of the State government, to uphold a statute assailed because of its alleged unconstitutionality and not to hold an Act unconstitutional unless it is clearly made to appear beyond a reasonable doubt that the statute is unconstitutional. See Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 So. 377, 20 Ann. Cas. 1047; Campbell v. Skinner Mfg. Co., 53 Fla. 632, 43 So. 874; State v. Sullivan, 95 Fla. 191, 116 So. 255; Holton v. State, 28 Fla. 303, 9 So. 716; State v. Rose, 97 Fla. 710, 122 So. 225; State v. Burns, 38 Fla. 367, 21 So. 290; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282.

It cannot be overlooked that gasoline is highly inflammable and its unregulated sale can or may affect the health and welfare of the citizens of Florida. The Legislature has the power to enact laws that will protect the people from this inflammable and explosive commodity, and when the same is offered for sale, likewise it has the power in protecting the health and safety of the people by prescribing rules and regulations on its distribution. It cannot be said that the owners of gasoline have an inherent or natural right to sell or dispose of gasoline like other property and thereby be immune from regulation. See Sheip Co. v. Amos, 100 Fla. 863, text 878, 130 So. 699.

While the Legislature cannot by an Act delegate the powers to a Board, public officer or Commission to enact a

law or even declare what the law shall be or to exercise an unrestricted discretion in applying the law, it may enact a law complete in itself designed to accomplish a general public purpose, and by the terms of the Act can name or designate certain officials within defined limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. See State v. Duval County, 76 Fla. 180, 79 So. 692; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789; Spencer v. Hunt, 109 Fla. 248, 147 So. 282; State v. Atlantic Coast Line Ry. Co., 56 Fla. 617, 47 So. 969; 32 L. R. A. (N. S.) 639; 60 Fla. 465, 54 So. 394 Panama Refining Co. v. Ryan, 293 U. S. 388, 79 L. Ed. 446; State v. Rose, 122 Fla. 413, 165 So. 347.

It is admitted that the Commissioner of Agriculture has the power under Section 3956 C. G. L. to prohibit the sale of this highly inflammable commodity in Florida failing to conform to the standard as prescribed. We construe the statute to authorize the Commissioner of Agriculture to make reasonable rules and regulations to effectuate the purposes of the Act which is to protect the public from inferior qualities and adulterations. It has not been shown here that the rules and regulations establishing the standards as made by the Commissioner of Agriculture are arbitrary, or an erroneous exercise of delegated powers or that the discretion in making or establishing the standards controlling the sale of gasoline has been abused. The constitutionality of the given Sections of the Act was challenged in the lower court by the plaintiff below and its contentions sustained. The Commissioner of Agriculture has not attempted to enact laws, as shown by this record, but has adopted rules and regulations fixing the standard of gasoline to be sold in Florida and thereby carrying out the legislative will as expressed in the Act now before the

Court. It is true that the Commissioner of Agriculture, acting through Inspectors, determined the instant fact, i. e., that the plaintiff was offering for sale in Florida gasoline not in conformity to prescribed standard. The Commissioner of Agriculture had this power. See Vol. 11 Am. Juris. par. 243, pages 960-1; Mutual Film Corp. v. Industrial Commission, 236 U. S. 230, 35 Sup. Ct. 387, 59 L. Ed. 552; Interstate Commerce Commission v. Goodrich Transit Co., 224 U. S. 194, 32 Sup. Ct. 436, 56 L. Ed. 729.

The rule of delegated power like the one involved in the Act now before the Court is supported and sustained by the weight of authority from other jurisdictions. The rule is well expressed in 11 Am. Juris. par. 241, pages 959-960, viz.:

"241. APPLICATIONS OF DELEGATED RULE-MAKING POWER.—Situations in which the various law-making bodies have delegated to administrative officers or boards the power to make regulations and to prescribe the necessary details to effectuate the declared policy of the law are very numerous and constantly increasing. Statutes conferring the power on executive officers to establish rules and regulations may be enacted by Congress, as well as by a state legislature; and this power may be conferred not only on executive officers, but also on administrative boards.

"As illustrations of the proper exercise of the power of Congress to delegate authority to establish rules and regulations may be mentioned; Acts permitting an executive officer to establish rules as to the navigation of particular waters or of canals owned by the United States; an Act permitting the Secretary of War to determine the amount of water that can safely be taken from the Great Lakes; Acts sanctioning the establishment of rules and regulations regarding aviation, aircraft, and radio; Acts authorizing the President of the United States to make rules and regu-

lations to carry into effect both the law for calling out the Militia and the Selective Draft Law; an Act authorizing the President to determine differences in cost of production here and abroad and to increase or decrease tariff rates to equalize the cost of production; the income tax provisions of the Tariff Act of 1913 conferring certain powers on the Secretary of the Treasury and authorizing him to establish certain standards as to imports on the recommendation of a board of experts; and an Act giving authority to the Federal Reserve Board to grant by special permit to national banks applying therefor, when not in contravention of state or local law, the right to act as trustee, executor, administrator, or registrar of stocks and bonds.

"Instances may be given of the operation of the same principle under state statutes, such as the empowering of boards and commissioners to regulate the taking of fish, or the construction of fishways; and the regulations prescribed under legislative authority by boards of health, humane societies, cemetery associations, police commissioners, medical examiners, dental examiners, optometry boards, pharmacy boards, civil service commissioners, insurance boards, banking commissioners or superintendents, drainage and irrigation commissioners, agricultural boards, school boards, and state railway commissions."

The case of Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525, appears to answer adversely the questions raised by the plaintiff in the lower court and rules the case at bar. See Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Monongahela Bridge Co. v. United States, 216 U. S. 177, 30 Sup. Ct. 356, 54 L. Ed. 435; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570; St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 281, 52 L. Ed. 1061; United States v. Chemical Founda-

tion, 272 U. S. 1, 47 Sup. Ct. 1, 71 L. Ed. 131; Federal Radio Commission v. Nelson Brothers Bond & Mtge. Co., 289 U. S. 266, 53 Sup. Ct. 627, 77 L. Ed. 1166; Hampton & Co. v. United States, 276 U. S. 394, 48 Sup. Ct. 348, 72 L. Ed. 624. While appellee contends that the rules and regulations under which its gasoline was seized were never approved, adopted or ratified by the Commissioner of Agriculture, this is a matter to be established on the trial of the merits of the case like any other question of fact, and if established, is a good defense.

The decree appealed from is hereby reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.