T. E. McRAE and W. R. PARARO, co-partners, trading and doing business under the firm name of CITY BARBER SHOP, v. J. OSCAR ROBBINS, R. L. ROBINSON, I. R. MELOY, as and constituting the Barbers' Sanitary Commission of the State of Florida.

9 So. (2nd) 284                                         En Banc
July 10, 1942

Messer & Willis, for appellants.

John Marshall Green, LeRoy Collins, Guyte P. McCord, Jr., McKay, Macfarlane, Jackson & Ferguson and Whitaker Brothers, for appellees.

CHAPMAN, J.:

Challenged by this appeal is a final decree entered by the Circuit Court of Leon County, Florida, sustaining the constitutionality of Chapter 20425, Acts of 1941, Laws of Florida, relating to the occupation of barbering and the operation of barber shops. The Act regulates the minimum prices to be charged for barber services and the hours of operation of barber shops. It authorizes the Barbers' Sanitary Commission to adopt and enforce reasonable rules, regulations and orders necessary to carry out the several provisions of the Act. The power is given to the Barbers' Sanitary Commission to grant and renew a barber's certificate and to revoke or suspend for lawful reasons a certificate previously granted. It is asserted that the several provisions of the Act can or may be sustained under the police power of the Constitution, but no contention is made as to the applicability of the provisions of Section 30 of Article XVI of the Florida Constitution.

Section I of the Act is a legislative finding that the occupation of barbering and the operation of barber shops are affected with a public interest; that it is necessary in promoting and conserving competitive, salutary and sanitary practices among barbers and barber shops that reasonable minimum charges should prevail for barber services in barber shops, and also that reasonable opening and closing hours should prevail; and in the interest of the health, safety and general welfare of the people Chapter 20425 *supra* was by the Legislature enacted.

One of the questions presented for adjudication is: Do the provisions of Chapter 20425, Acts of 1941, Laws of Florida, empowering the Barbers' Sanitary

Commission to fix minimum prices to be charged by barbers for their services violate the provisions of Sections 1 and 12 of the Bill of Rights of the Constitution of Florida, as an unreasonable restraint of the freedom of personal liberty, contract and property, as a denial of the equal protection of the law and as depriving a person of his liberty and property without due process of law?

The Barbers' Sanitary Commission, by terms of the Act, when brought to its attention by a petition of 66 2/3% of the registered barbers of a county, that unfair and unreasonable economic practices prevail among the barbers or barber shops tending to make insecure the economic status of barbers or that the hours of operation are unreasonable and make difficult or inadequate sanitary inspection affecting the health and efficiency of the barbers or the health and safety of the patrons or customers of the shops, and when these conditions are found to exist, then the Commission, after due notice and hearing, shall be authorized to promulgate scales of reasonable minimum prices that shall obtain and prevail and fix reasonable hours for opening and closing of shops in said county, or it may prescribe zones in a county with appropriate varying prices in said zone of a county and hours for the opening and closing of shops, provided such orders, rules and regulations are reasonable and otherwise legal in their adoption and in their operation.

The Legislature determined that the occupation of barbering and the operation of barber shops were "affected with a public interest." Section 30 of Article XVI of the Florida Constitution grants the Legislature full power to enact laws designed for the correction of abuses and to prevent unjust discrimination and ex-

cessive charges by persons and corporations engaged as common carriers in transporting persons and property, "or performing other services of a public nature. . . ." Prices of gas, water and electricity have been regulated by Acts enacted under this provision of the Florida Constitution. See City of Tampa v. Tampa Waterworks Co., 45 Fla. 600, 34 So. 631; Gainesville Gas & Elec. Power Co. v. Gainesville, 63 Fla. 425, 58 So. 758; State ex rel. Ellis v. Tampa Waterworks Co., 56 Fla. 858, 48 So. 639; State ex rel. Railroad Commission v. Southern Tel. & Con. Co., 65 Fla. 270, 61 So. 506; Tampa Waterworks Co. v. Tampa, 26 Sup. Ct. 23, 199 U. S. 241, 50 L. Ed. 170. Section 30 of Article XVI of the Florida Constitution grants power to the Legislature to enact laws to correct abuses, prevent unjust discrimination and excessive charges in business operated by persons and corporations "performing services of a public nature."

The constitutionality of price fixing measures has been considered and sustained by this Court. See Miami Home Milk Producers Asso. v. Milk Control Board, 124 Fla. 797, 169 So. 541; Bon Ton Cleaners & Dyers, Inc., v. Cleaning, Dyeing & Pressing Bd., 128 Fla. 533, 176 So. 55; Economy Cash & Carry Cleaners, Inc. v. Cleaning, Dyeing & Pressing Bd., 128 Fla. 408, 174 So. 829; Bristol-Myers Co. v. Webb's Cut Rate Drug Co., Inc., 137 Fla. 508, 188 So. 91; Miami Laundry Co. v. Florida Dry Cleaning & Laundry Bd., 134 Fla. 1, 183 So. 759; Mayo v. The Polk Co., 124 Fla. 534, 169 So. 41. Likewise see: 16 C.J.S. par. 690, pages 1445-6; 11 Am. Jur. par. 282, pages 1042-3; Nebbia v. New York, 291 U. S. 502, 78 L. Ed. 940, 54 Sup. Ct. 505; 89 A.L.R. 1469; Old Dearborn Distrib. Co. v. Seagram-Distillers Corp., 299 U.S. 183, 81 L Ed. 109,

57 Sup. Ct. 139; 106 A.L.R. 1476; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 81 L. Ed. 703, 57 Sup. Ct. 578, 108 A.L.R. 1330; United States v. Rock Royal Co-Op., 307 U. S. 533, 83 L. Ed. 1446, 59 Sup. Ct. 993; Mayo v. Lakeland Highlands Co., 309 U. S. 310, 84 L. Ed. 774, 60 Sup. Ct. 517; Sunshine Anthracite Co. v. Adkins, 310 U. S. 381, 84 L. Ed. 1263, 60 Sup. Ct. 907; Carter v. Carter, 298 U. S. 238, 80 L. Ed. 1160, 56 Sup. Ct. 855; Olsen v. Nebraska, 313 U.S. 236, 85 L. Ed. 1303, 61 Sup. Ct. 862; Duckworth v. Arkansas, 314 U. S. 390, 86 L. Ed. 294, 62 Sup. Ct. 311, 138 A.L.R. 1144.

The phrase "affected with a public interest" means that the occupation or industry when in operation affects the health, safety and welfare of the people and the public is interested to such an extent that reasonable laws can or may be enacted for its control and regulation. The extent to which an occupation or business may be regulated varies with different kinds of businesses. The Legislature may enact reasonable regulations for barber shops, beauty culture salons, fruit industries, hotels, drivers of automobiles, and similar businesses, on the theory that they "are affected with a public interest." See 16 C.J.S. 1424-5, par. 672.

Whether or not the Barbers' Sanitary Commission has the power, "when considering the economic status of the barber," to regulate the individual compensation that shall be made to the barber by proprietors of the barber shop in which he is employed is not presented on this record.

Counsel for appellants cite State ex rel. Fulton v. Ives, 123 Fla. 401, 167 So. 394. This decision construes Chapter 14650, Acts of 1931, Laws of Florida, and the same was held unconstitutional. The unconstitutional

features appearing in Chapter 14650, *supra,* were omitted from Chapter 20425, Acts of 1941, here involved. It is our conclusion that questions two and four posed for adjudication are each answered by the authorities *supra* adversely to the contention of counsel for appellants.

Question five is viz: Assuming that Chapter 20425, Acts of 1941, Laws of Florida, is not unconstitutional *ipso jure,* is the order of the Barbers' Sanitary Commission, complained of in this cause, an unlawful attempt to exercise the powers lawfully conferred by said Chapter 20425?

The prices promulgated by the Barbers' Sanitary Commission applicable to Leon County are viz:

| "Haircut | | 50 Cts. | All Facial Packs | 75 Cts. |
|---|---|---|---|---|
| Shave | | 25 Cts. | Facial | 50 Cts. |
| Shampoo | (Plain) | 50 Cts. | Combination Facial | 75 Cts. |
| Shampoo | (Medicated) | 75 Cts. | Tonics | 25 Cts. |
| Singe | | 25 Cts. | Neck Clip | 10 Cts. |
| | | | Mustache Trim | 10 Cts." |

Counsel point out that the shop operated by the two appellants consists of three chairs, with the appellants each operating a chair and they employ an additional barber; that their rents, utility bills and other overhead expenses are kept at a minimum and that they can operate at a profit and charge forty cents for a haircut and reduce other amounts for the services fixed by the order of the Commission, and that all sanitary rules can be observed and the health, safety and welfare of the public promoted; that the plaintiffs have customers who cannot patronize their shops if the hours fixed by the order are observed; and that the several provisions of the order of the Commission are each unreasonable, arbitrary and discriminatory.

Section 5 of the Act authorized the Commission to adopt and enforce rules, regulations and orders necessary to carry out the provisions of the Act. It has the power by the Act, by an appropriate order, to fix the reasonable minimum prices applicable to a county or zone, as well as the opening and closing hours of barber shops. These orders can be rescinded or modified, or substitute orders promulgated. Statutes delegating rule making and enforcement powers to officers and boards for effectuating a declared policy of the law are numerous and generally are by the courts sustained. See Mayo v. The Texas Co., 137 Fla. 218, 188 So. 206. While the delegated power under a statute to make reasonable rules, orders and regulations can or may be sustained, it does not follow as a corollary that the orders and rules so made are always reasonable, as distinguished from unreasonable and arbitrary orders which are violate of due process guaranties. Such statutes do not confer on a board or commission arbitrary or unlimited powers not granted by the terms and provisions of the Act.

Section 3 of the Act grants the power to the Barber Commission, after due notice and hearing, to regulate barbers and by order to adopt a scale of reasonable minimum prices to be charged for barber services and to fix the opening and closing hours of shops within the area. The terms or provisions of the Act fail to make the orders, rules and regulations of the Commission prima facie reasonable but for enforcement purposes the order fixing a scale of reasonable minimum prices and the hours of opening and closing barber shops adopted by the Barber Commission are assumed to be prima facie reasonable, and within the power of the Commission to adopt if supported by

sufficient evidence. If the scale of minimum prices for barber service and hours of opening and closing shops as promulgated by the Commission are challenged as being so unreasonable, arbitrary or discriminatory as to deprive a citizen of a right to earn a living and otherwise violative of the due process guaranties or not authorized by the grants of power enumerated in the Act, then a judicial question can or may be presented. See 16 C.J.S. 1448-9, par. 690, and authorities cited; 11 Am. Jur. 947, par. 234.

The bill of complaint alleges that pursuant to notice given to all registered barbers of Leon County, inclusive of plaintiffs, on December 17, 1941, the Barber Commission by order adopted a scale of minimum prices to be charged for barbers' service and fixing the hours for opening and closing barber shops in Leon County which the Barber Commission concluded were reasonable and fully authorized by the terms and provisions of the Act. The bill of complaint alleges that the aforesaid order fixing a scale of minimum prices for barber services and the hours of opening and closing shops are unreasonable, unwarranted, arbitrary and violative of due process guaranties and that the aforesaid orders are not authorized by the terms and provisions of the Act.

The bill of complaint alleges that plaintiffs' shop consists of three chairs and they each operate a chair and employ one barber; that by applying rigid economy while operating, the utility bills, laundry expenses, and other incidentals were always maintained at a low level, and by exercising frugality in maintaining at a minimum all over-head expenses they were thereby in a position to render to the public approved barber services and were able to operate their shop at

an attractive profit when charging their customers 40c per hair cut and were in a position to decrease prices for other barber services to an amount less than that fixed by the order of the Barber Commission dated December 17, 1941. It was also alleged that the hours prescribed for the opening and closing of barber shops are unreasonable; that many customers of the plaintiffs cannot get away from their work until after 6:00 o'clock P.M., and the plaintiffs desire to accommodate their established trade by keeping their shop open later; that all sanitary requirements are meticulously observed. The prayer is for an order dissolving the order of the Barber Commission dated December 17, 1941, as unreasonable, unconstitutional and unenforceable as against the plaintiffs.

The Barber Commission filed a motion to dismiss the bill of complaint on seven different grounds and one of which was that there was no equity in the bill of complaint. The facts, well pleaded in the bill of complaint, are admitted to be true for the purpose of a ruling on the motion to dismiss. If there is equity in the bill of complaint the motion to dismiss should be denied. See Matthews v. Wilkerson, 132 Fla. 753, 182 So. 439. The hours for opening and closing barber shop and the scale of prices fixed for barber services are alleged to be unreasonable, unwarranted and violative of the due process guaranties, and these serious allegations of fact are admitted to be true on the motion to dismiss. We think these allegations are sufficient to require an answer on the part of the Barber Commission and on these issues testimony can be taken and the rights of the parties adjudicated in an orderly manner. See Board of Barber Examiners v. Parker, 190 La. 214, 182 So. 485; Beaty v. Hum-

phrey, 195 Ark. 1008, 115 S.W. (2nd) 559; Hoff v. State, 39 Del. Rep. 134, 197 Atl. 75; State Board of Barber Examiners v. Blocker, 176 Ga. 125, 167 S. E. 298; West v. Chesapeake & P. Tel. Co., 295 U.S. 662, 55 Sup. Ct. 894, 79 L. Ed. 1640.

The order of the lower court sustaining the constitutionality of the Act is hereby affirmed. That part of the decree sustaining the order dated December 17, 1941, adopted by the Barber Commission holding as a matter of law that the prices and hours were lawful is reversed with directions that an order be entered allowing the defendants below to file an answer and that testimony be taken on the issue of whether or not the aforesaid order was reasonable, or unreasonable, or unwarranted or violative or due process guaranties, and that further proceedings be had in the lower court not inconsistent with this opinion.

It is so ordered.

WHITFIELD, TERRELL and THOMAS, JJ., concur.

BROWN, C. J., concurs in part and dissents in part.

BUFORD and ADAMS, JJ., dissent.

WHITFIELD, J., concurring with CHAPMAN, J.:

The Circuit Court properly decreed the statute to be valid as against the attack made on it, the service performed being "of a public nature." Sec. 30, Art. XVI of the Constitution of 1885; Wolff Co. v. Industrial Ct., 262 U.S. 522, 43 Sup. Ct. 630, 67 L. Ed. 1103; Miami Laundry Co. v. Fla. Dry Cleaning & Laundry Bd., 134 Fla. 1, 183 So. 759, 119 A.L.R. 956-986, 33 Am. Jur. p. 8.

That portion of the decree which *adjudicates* that the order of the administrative commission is a con-

stitutional and lawful order does not have a sufficient predicate in the record. The statute does not make the administrative order of the commission prima facie valid; and the record contains no findings of the commission based upon evidence duly adduced and considered to justify the administrative order made and here challenged. See Laney v. Holbrook, et al., Board of Public Instruction, filed May 26, 1942. Section 3, Chapter 20425 requires the Commission "after due notice and hearing" to promulgate reasonable necessary minimum prices and hours.

The Commission has only the delegated administrative authority confered by the particular statute; and the order made by the commission should be predicated upon evidence and facts found to show compliance with the statute under which the delegated authority is exercised. The order made should contain statements of ultimate facts found showing that the statutory authority was followed and that the order made by the administrative commission has adequate support in evidence duly adduced and considered with findings thereon warranting the order. 51 C.J. pp. 60, 65; Wichita R.R. Pub. Util. Comm., Headnote 6, 260 U.S. 48, 43 Sup. Ct. 51, 67 L. Ed. 124; 3 Pond's Pub. Utilities, Section 890, pp. 1769 et seq. Neither the order of the commission nor the judicial decree states that the scale of minimum prices is reasonable or that the hours prescribed are reasonable.

Plaintiffs have a right to maintain the suit, and the portions of the decree adjudging the order by the commission acting under delegated authority, to be constitutional and lawful, is on this record clearly erroneous and should be reversed. See Sections 1, 4, Decl. Rights, Fla. Constitution of 1885; Section 4637 (2918) C.G.L.

While the essentially legislative and judicial "powers of government" as stated by Article II of the Constitution may not be delegated, yet because of the necessities arising upon contemplated contingencies or unascertained facts or conditions, or in the detailed or complicated administration of a law, when direct or immediate or continuing legislative or judicial action is inexpedient or impracticable, administrative functions including quasi-legislative or quasi-judicial functions of government not involving any essentially judicial or legislative *powers,* may within definite limitations be conferred upon and exercised or performed by permissible administrative agencies, in the detailed or continuing enforcement of laws, that are as enacted complete in their content, designed to serve a general public purpose but require findings of facts and detailed or continuing action in administering the laws without unnecessary delays, all administrative actions taken being subject to judicial review. The proceedings of the administrative tribunal must conform to the statute in ascertaining facts in making findings on the evidence and in orders made. Sec. 30, Art. XVI, Fla. Constitution 1885, 11 Am. Jur. p. 921 et seq.; 16 C. J. 295 et seq.; State v. A.C.L. R. Co., 56 Fla. 617, 47 So. 969, 32 L.R.A. (NS) 639; State v. Duval County, 76 Fla. 180, 79 So. 692; Fla. Motor Lines v. RR. Com'rs., 100 Fla. 538, 129 So. 876; State ex rel. v. Williams, 116 Fla. 196, 156 So. 705. 11 Am. Jur. pages 949, 960.

Where a statutory board, commission or officer or other tribunal or agency is lawfully given administrative and limited quasi-legislative or quasi-judicial authority or duties, such authority or duties must not include any substantive legislative or judicial *powers*

that may not be delegated; and such authority must be duly defined and limited by laws complete in themselves. in prescribing delegated authority, so that by appropriate judicial review and control any action taken pursuant to such delegated authority or duties may be kept within the defined limits of the authority conferred and within the express and implied limitations of all controlling provisions and principles of dominant law. The commission here has no "legislative or judicial power," but only such administrative authority and duties as are conferred by Chapter 19183, Acts of 1939, and Chapter 20425, Acts of 1941; and such administrative authority and duties can be exercised or performed only as the statutes provide.

When facts are to be considered and determined in the administration of statutes, there must be provisions prescribed for due notice to interested parties as to time and place of hearings with appropriate opportunity to be heard in orderly procedure sufficient to afford due process and equal protection of the laws in any official action taken under the delegated authority. The statutes and the principles of organic law require testimony to be adduced and facts found thereon upon which the administrative orders are to be made.

The evidence adduced at hearings in fixing rates and hours of service must be taken down and made a part of the record of the administrative proceedings, and specific findings based on such evidence must be made and entered in the record as a necessary predicate for the order made, so that such order together with the evidence and the findings thereon may be reviewed in appropriate judicial procedure. Such administrative orders made without a record of the evidence adduced

in support thereof, are without legal effect, since it is the evidence adduced and the findings made thereon, and not merely the unsupported orders made, which show the validity or invalidity of the administrative orders made under delegated administrative authority for a governmental purpose. See 260 U.S. 48; State ex rel. v. R.R. Com. 93 Fla. 104, 111 So. 391; 51 C.J. 57, 60, 74.

In this case no evidence appears in the record to support the administrative order that is by the circuit court adjudicated to be constitutional and lawful.

TERRELL, CHAPMAN and THOMAS, JJ., concur.

BROWN, C. J., concurs in part and dissents in part.

BUFORD, J., dissents.

BROWN, C. J., dissenting in part and concurring in part with the opinions of Justices CHAPMAN and WHITFIELD:

I cannot agree that the present Act, Chapter 20425, Acts of 1941, eliminates those features of Chapter 16799, Acts of 1935, which caused this Court to hold the price-fixing provisions of the former statute unconstitutional in the case of State ex rel. Fulton v. Ives, et al., 123 Fla. 401, 167 So. 394. Applying the principles laid down by this Court in that case, the price-fixing provisions of the present Act are, in my opinion likewise unconstitutional. I am also inclined to the view that the recent 1941 Act now before us attempts to delegate to the Barbers' Sanitary Commission, an administrative board consisting of "three practical barbers" created by Chapter 19183, Acts of 1939, the legislative power of fixing "reasonable prices" for barbers' services, without establishing a sufficiently definite rule by which the board is to determine

what are "reasonable prices." See Panama Refining Co. v. Ryan, 293 U.S. 388, 79 Law Ed. 446, 55 S.C. 241, and cases therein cited, and also the cases cited in my dissenting opinion in Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759.

Florida's first price-fixing experiment dealt with a great public utility, the railroads. This was back in 1887. The Legislature in that year adopted a statute, Chapter 3743, establishing a Railroad Commission. This statute was repealed in 1891. A new Railroad Commission Statute was adopted by the Legislature in 1897, during Governor Bloxham's second administration. See Chapter 4549, Acts of 1897. The first statute did not provide any vocational qualifications for the commissioners, but the Act of 1897 did make a temporary provision of that nature. It provided that the Governor should appoint three railroad commissioners, one to be "learned in the law," one to be "of experience in the railroad business," and the third to be "engaged in agricultural pursuits." However, these appointees were to hold only until their successors were elected and qualified in the next general election in 1898. The Act provided for the election of three railroad commissioners at the next general election, and in subsequent elections, "without regard to vocation." After the Act of 1897 was adopted, the Governor appointed as one of the three commissioners, Mr. H. E. Day, a prominent and highly respected citizen of Florida who was an experienced railroad man. He was elected by the people in 1898, but was defeated in the next election. So, Mr. Day was the only "railroad man" who was ever appointed to or elected as a member of the Railroad Commission. The

main purpose of these statutes was to protect the public against excessive and discriminatory freight and passenger rates by giving the commissioners the power to fix and regulate such rates as well as to regulate the service rendered by the railroads, and to prevent discriminations.

As we have seen, the Act now before us confers price-fixing powers upon an administrative board consisting of "three practical barbers," and the Act by its language shows that it was adopted to protest and promote the economic status of a deservedly popular group, the barbers of Florida, by giving the commission the power to fix the price of barber services and thus prevent price-cutting and destructive competition among the barbers. I do not for a moment think that the purpose of the framers of this Act was to impose unreasonably high or exorbitant prices upon the general public. I am sure that the purpose of the Barber Sanitary Commission Act of 1939, Chapter 19183, and of the present Act, Chapter 20425, considered together, was to raise the standards of sanitation and efficiency in the conduct of the barber shops of Florida, as well as the educational and training prerequisites of the barbers themselves, and to protect and promote the economic status of the barbers, both the operating barbers and the employed barbers. But the Act does place tremendous authority in the hands of this three-man commission, by which it can, acting with the power of the State of Florida behind it, put out of business any barber who charges less than the price fixed by the commission. And of course if this Act is upheld the legislature can later provide a commission of physicians to prescribe minimum fees to be charged by doctors to the public for their services,

and the same thing could be done for the dentists, the lawyers, the osteopathic practitioners, the chiropracors, and all other professions.

Our Constitution contemplates the largest possible degree of individual freedom consistent with the general welfare. Section 1 of our Declaration of Rights provides: "All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and safety." It is a fundamental purpose of our Constitution and of the National Constitution that government should protect the citizens in the enjoyment of life, liberty, property and the pursuit of happiness. To that end, both our National and State governments have attempted by statute to prohibit monopolies and all combinations in restraint of trade and free competition; or where monopolies are inevitable, such as is usually the case with public utilities, the effort has been to establish commissions for their strict regulation, both as to the character of service rendered and the prices charged the public, else the individual citizens composing the public would be helpless and would be compelled to pay any rates or charges these utilities might see fit to impose, no matter how exorbitant or discriminatory. Of course in time of war our national government and the President in the exercise of the war powers can provide for the control of all prices, but this Act was passed in the Spring of 1941, as a peace time measure; and my opinion is that under our Constitution, free enterprise is the rule and price-fixing the exception and that the State cannot constitutionally provide for price-fixing except as applied to public utilities.

In all other respects I concur in the opinion of Mr. Justice CHAPMAN, and in the concurring opinion of Mr. Justice WHITFIELD, as well as in the judgment of reversal.

BUFORD, J., dissenting:

I am unable to concur in the conclusion reached as reflected by the proposed judgment following the opinions prepared by Mr. Justice CHAPMAN and Mr. Justice WHITFIELD.

I can agree that in the main the legal principles applicable in cases of this sort are correctly stated in that opinion, but I think they have not been therein properly applied. As I construe the allegations of the appellant's bill there is no averment that the prices and hours fixed by the challenged order are not reasonable, fair and justified when applied to the majority of the affected places of business within the fixed area, nor are there any allegations that the prices and hours are unreasonable and arbitrary as to the particular area in which appellants place of business is located. But the allegations are to the effect that the regulations are unreasonable, arbitrary and unlawful when applied to plaintiffs (a) because the plaintiffs while being within the affected area are in position to operate their particular place of business at less expense than is required of others engaged in such business within the affected area and (b) because plaintiffs have a clientele which can be more conveniently served at hours different from those prescribed in the order or regulation.

If the order of the Barbers' Sanitary Commission was contrary to the essential requirements of the law or it constituted a palpable miscarriage of justice and

worked a substantial injury to plaintiff, then plaintiff had his remedy by review on certiorari. See Sirmans v. Owen, 87 Fla. 485, 100 Sou. 734; Fla. Motor Lines v. R. R. Comm. 100 Fla. 538, 129 Sou. 876; Prettyman v. Fla. Real Estate Comm., 92 Fla. 515, 109 Sou. 442; Greater Miami Dev. Corp. v. Pender, 142 Fla. 390, 194 Sou. 867; State v. Rose, 123 Fla. 544, 167 Sou. 21; West Flagler Amusement Co. v. State Racing Comm., 122 Fla. 222, 165 Sou. 64.

In Miami Laundry Co. v. Fla. Dry Cleaning & Laundry Board, 134 Fla. 1, 183 Sou. 758, it is said:

"Courts are not authorized to adjudicate questions of public policy involved in such regulations or to conduct an inquiry into questions of fact pertaining to matters of policy, but where the Legislature has made such an investigation and determination, unless shown to be clearly arbitrary, erroneous or unwarranted, the courts will approve them. American Jurisprudence, Vol. 11, page 823.

"The Legislature is accordingly the judge of when the facts are such that a given business should be regulated under the police power or when it is affected with a public interest to such an extent as to require regulation. If the regulation enforced has some reasonable relations to the legislative purpose and is not arbitrary or discriminatory, the requirements of due process are satisfied. In its last analysis, government, regardless of the form it takes, is nothing more than an instrument to preserve an ordered society. Laws are nothing more than rules promulgated by government as a means to an ordered society.

"It would be a strange anomaly to hold that the complexities in society had become such that the

legislature was powerless to grant appropriate relief against abuses arising therefrom."

If such allegations as these are held to be sufficient, if sustained by proof, to constitute a basis for being relieved of the necessity of complying with the order or to warant the court in granting injunction against the enforcement of the regulation, then such regulations can have no force and effect and the result would be that each place of business in a given area would be entitled to have prices and hours fixed according to its individual best interest. See Miami Laundry Co. v. Fla. Dry Cleaning & Laundry Board, 134 Fla. 1, 183 Sou. 758, 119 A.L.R. 956 and annotated notes.

The regulations such as are here under consideration are upheld only because of the paramount public interest and, while the regulations may, as is alleged, in this case, work a hardship on some individuals, they must nevertheles, be upheld and enforced to protect the paramount public interest. When the welfare of the individual runs counter to the welfare of the public, then the individual must yield to the public welfare. This principle is universally recognized.

Indeed, the power to fix prices and hours has been recognized to be vested in the legislature as a means to protect the public welfare. To uphold such legislation it is recognized that maximum prices may be fixed to protect the public against the cupidity of those who engage in the sale and distribution of essential commodities and this may be done although the right of individual contract is thereby limited. On the other hand, the power rests in the Legislature to fix minimum prices at which certain articles essential

to the public use may be sold as well as to fix the minimum price at which certain services infected with public interest may be rendered and also the hours within which such services may be rendered within the reasonably fixed zones so as to protect those within the classification from unfair and ruinous competition so that the standards of such service to the public may be maintained at a height which will protect the public from the hazards incident to attempting to meet ruinous competition resulting in the necessity of the attempt to perform the service for less than its average cost of maintaining it within the regulated area. This power is also recognized although its application may work a hardship on some individuals who, because of fortunate circumstances, may be in a peculiar position to perform the service efficiently at less than the fixed price and at hours different from those prescribed and still realize a fair profit. Such individuals must yield their private rights to the public welfare when the legislature within its power has so limited the right of private contract.

The power of the Legislature in this regard was not always recognized. Its full recognition has come within recent years but that it does so exist is no longer open to question. See Miami Laundry Co. v. Fla. Dry Cleaning & Laundry Board, supra; Nebbie v. State of New York, 291 U.S. 502, 78 L. Ed. 940; 89 A.L.R. 1469, West Coast Hotel Co. v. Parrish, 300 U.S. 379, 81 L. Ed. 703, 108 A.L.R. 1330; Herrin v. Arnold, 183 Okla. 392, 82 Pac. 997; Olsen v. Nebraska etc., 313 U.S. 236, 61 Sup. Ct. 862, 133 A.L.R. 1500; Tagg Bros & Moorhead v. U. S., 280 U.S. 420, 50 Sup. Ct. Rep. 220, 74 L. Ed. 524.

Stated in another way, the rule is that if plaintiff's place of business is located within the area as to which the regulations may reasonably and lawfully be applied, then plaintiff cannot be heard to say that the regulations are unreasonable and arbitrary when applied to him and to his place of business on the ground that because of peculiar circumstances surrounding the conduct of his business the regulation will work a hardship on him and because of which he can perform the service for less price and because of which he should be allowed to disregard the regulation as to hours.

This must be true because if the regulations are not applicable to one who is within the properly designated zone or area, then that one being excepted from the operation of the regulations destroys the uniformity of application of the regulations and no one may be bound by the regulations. The recognition of a contrary rule would result in the abrogation of every principle upon which price fixing statutes have been upheld and would foster the cutting of prices and other unfair trade practices which such regulations are designed to eliminate.

If the place of business of the plaintiffs is so located that it should be excluded from the affected area the statute (Sec. 3A Chap. 20425, Acts of 1941) makes ample provision for that question to be presented to the Administrative Board for determination and if such determination be adverse, then review thereof by the courts may be had on certiorari.

There is nothing in the bill of complaint to show that the place of business of the complainant is not within the most favorable part of the affected area. There is nothing to show that the regulation is

134

arbitrary or discriminatory when applied to that part of the area in which this place of business is located or that the Board acted without a full hearing and upon adequate evidence to sustain the regulation as to that part of the area in which complainant's place of business is located. It, therefore, follows that the bill of complaint fails to present allegations upon which injunctive relief may rest. See West Coast Hotel Co. v. Parrish, 300 U.S. 379, 81 L. Ed. 703, 108 A.L.R. 1330, and notes. Also Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, supra.

It is my opinion that the action of the Circuit Court was without error.

ADAMS, J., concurs.