NATHAN MAYO, as Commissioner of Agriculture of the State of Florida, and CHESTER B. McMULLEN, as State Attorney for the Sixth Judicial Circuit in and for the State of Florida, and the State of Florida, acting through said NATHAN MAYO, as Commissioner aforesaid, and CHESTER B. McMULLEN, as State Attorney Aforesaid, v. P. A. BOSSENBURY, individually and doing business as SILVER POULTRY FARM.

10 So. (2nd) 725                                           June Term, 1942
December 1, 1942                                             En Banc

*William C. Pierce,* for petitioners.

*Erle B. Askew and Clair A. Davis,* for respondent.

CHAPMAN, J.:

The Commissioner of Agriculture, the Honorable Nathan Mayo, filed a bill of complaint in the Circuit Court of Pinellas County, Florida, seeking the issuance of a restraining order against P. A. Bossenbury, doing business in Pinellas County, Florida, under the trade name of Silver Poultry Farm. It was alleged that an Egg Dealer's Certificate had been issued by the State Agricultural Department to the defendant below, respondent here, under the provisions of Chapter 16982, Acts of 1935, Laws of Florida. The defendant, after receiving the Egg Dealer's Certificate, continuously refused to conform with or abide by the several provisions of the aforesaid Act, on the theory that the Act was in contravention of the rights guaranteed or safeguarded to him by the United States Constitution. He filed a motion to dismiss the bill of complaint largely on constitutional grounds stated in the motion, and the chancellor below held that enumerated provisions of the Act were unconstitutional and void and the enforcement of the remaining portions were thereby rendered impotent or unenforceable. The order of dismissal is challenged here on petition for an interlocutory writ of certiorari.

Section 1 of Chapter 16982, *supra,* defines a dealer, as referred to in the Act, as any person, firm, corporation or association selling or offering for sale in or into the State of Florida one thirty-dozen case, or its equivalent, or more, of eggs in any one week. The respondent at the time of the filing of the bill of complaint, it was alleged, was an egg dealer in the State within the meaning of Section 1 of the Act. The chancellor below concluded that Section 1 of the Act established an arbitrary and unreasonable classification between persons engaged in the same kind of business. The Act makes a person selling thirty dozen eggs in any one week a dealer, although he would or may sell less than 30 dozen for 51 weeks of the year; while a person selling 29 dozen and

11 eggs for 52 weeks in the course of a year would not by the terms of the Act be classified as a dealer. He concluded that Section 1 of the Act violated Section 1 of the Declaration of Rights of the Florida Constitution and the 14th Amendment of the Federal Constitution.

It is settled law that the constitutionality of an Act cannot be questioned by a party whose rights are not affected. It is necessary to establish that some constitutional right or privilege has been denied before the court will hear a person. See Morrison v. Braddock, 100 Fla. 1152, 131 So. 124; Robinson v. Florida Dry Cleaning Board, 141 Fla. 899, 194 So. 269. On the motion to dismiss, all facts well pleaded are admitted to be true. The respondent is shown to be a holder of Certificate No. 4893, issued under the provisions of Chapter 16982, *supra,* and on the record it appears that he is a dealer selling each week 30 dozen eggs or more and is not shown to be within the class selling less than 30 dozen eggs each week. It must appear that his rights are affected under the challenged Act before the courts will hear his complaint.

In the case of Mayo v. The Polk Co., 124 Fla. 534, 169 So. 41, the court had before it the constitutionality of Chapter 16860, Acts of 1935, Laws of Florida, which regulated the purchase, sale and handling of citrus fruit. The terms of the Act defined a citrus dealer as every person other than a producer, consignor, commission merchant, consignment shipper, cash buyer, broker, or agent, who in any manner makes or attempts to make money or any other thing of value on citrus fruit by dealing in the same in any manner whatsoever. This Court sustained the Act and, in part, said:

"The fact that a single industry is singled out for regulation is not material. Legislative classification for this purpose may rest on narrow distinctions. Such legislation is grounded on the existence of some evil or evils to be corrected and the Legislature is generally the judge as to whether they exist and the necessity for their correction. The Act will not be held invalid merely because it fails to regulate all businesses even though they be similar in nature. Discriminations that are subject to resistance are those in which persons engaged in the same business are regulated differently or are

granted different privileges under similar conditions. The rule is general that the Legislature may constitute classes for the purpose of police regulation if there is no discrimination among those similarly situated and there is otherwise a reasonable basis for the classification. Because of the hazards and other circumstances affecting the citrus fruit industry we have reached the conclusion that the regulation and classification complained of was within the power of the Legislature to make. Cahoon v. Smith, 99 Fla. 1174, 128 So. 632 (Reversed for other reasons 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264); West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361; State v. Walter Bowen & Co., 86 Wash. 23 149 Pac. 330; Northern Cedar Co. v. French, 131 Wash. 394, 230 Pac. 837."

It is settled that a business clothed with a public interest is the subject of regulation, and when the regulations are reasonable and not arbitrary, there is no denial of due process of law. See McRae v. Robbins, 109 Fla. 151, 9 So. (2nd) 284; 16 C. J. S. par. 672, pp. 1424-5. Due process of law is not denied by the imposition of *reasonable* regulations relative to food products for the protection of the public. See 16 C. J. S. par. 674, pp. 1426-7; Buttfield v. Stranahan, 192 U. S. 470, 48 L. Ed. 525, 24 Sup. Ct. 349. The enactment of Chapter 16982, *supra,* was for the purpose of protecting the health of the people of Florida by providing them with pure and wholesome food in the form of eggs. If an egg dealer within the meaning of the Act buys eggs from those producing or handling less than 30 dozen each week, then it is safe to conclude that most of the eggs consumed by the people of Florida will be inspected and wholesome food provided. It is true that persons handling less than 30 dozen per week selling directly to the consumer may escape inspection, but most of the eggs will be inspected prior to sale to the public.

The contention here is that the challenged Act does not apply to all persons, firms and corporations dealing in eggs, but only to that group of egg dealers each week handling 30 dozen or more, and for this reason the Act is arbitrary and unreasonable. The answer to this contention is the utterances of the Supreme Court of the United States in the case of West Coast Hotel Co. v. Parrish, 300 U. S. 379, 81 L. Ed.

455, 57 Sup. Ct. 578, 108 A. L. R. 1330, when the Court, in part, said:

"This Court has frequently held that the legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.' If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' There is no 'doctrinaire requirement' that the legislation should be couched in all embracing terms. Carroll v. Greenwich Ins. Co. 199 U. S. 401, 411, 50 L. Ed. 246, 250, 26 S. Ct. 66; Patsone v. Pennsylvania, 232 U. S. 138, 144, 58 L. Ed. 539, 543, 34 S. Ct. 281; Keokee Consol. Coke Co. v. Taylor, 234 U. S. 224, 227, 58 L. Ed. 1288, 1289, 34 S. Ct. 856; Sproles v. Binford, 286 U. S. 374, 396, 76 L. Ed. 1167, 1183, 52 S. Ct. 581; Semler v. Oregon Bd. 294 U. S. 608, 610, 611, 79 L. Ed. 1086, 1088, 1089, 55 S. Ct. 570. . . . "

It was the conclusion of the chancellor below that the several provisions of Section 9 of the Act are an unconstitutional delegation of legislative power to the Commissioner of Agriculture. It is to be observed that the reasonableness of the grades and standards of quality of eggs is not presented by this record; neither does this Court rule upon or attempt to settle such issue. Section 9 provides:

"Section 9. The Commissioner of Agriculture is hereby authorized to determine, establish, and promulgate, from time to time, reasonable grades and/or standards of quality for eggs to be sold or offered for sale in this State of Florida, such as will, in his judgment, promote honest and fair dealing in the interest of the consumer; and he is authorized to alter or modify such grades and/or standards of quality from time to time, as in his judgment, honest and fair dealing in the interest of the consumer may require: Provided, however, that the grades and standards of quality so fixed by the Commissioner of Agriculture shall be based upon requirements necessary to meet the grades and standards of quality prescribed by the United States Department of Agriculture, and

the tolerance to be allowed shall be the same as is allowed in each grade or standard of quality by the United States Department of Agriculture."

The validity of that part of the above statute which says: "or which may hereafter be described by such United States Department of Agriculture" is not involved in this case.

The delegation of rule making power by statutory enactment was squarely presented to this Court in the case of Mayo v. The Texas Company, 137 Fla. 218, 188 So. 206. We think the case is decisive of the point in controversy. See 16 C.J.S. 379-80, par. 19.

It appears that the learned chancellor below applied the improper principle of law, and for this reason, the interlocutory writ of certiorari is issued and the challenged order quashed, with directions for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

BROWN, C. J., WHITFIELD, BUFORD, TERRELL, THOMAS and ADAMS, JJ., concur.