Alvin J. Taylor Secretary, Department of Health and Rehabilitative Services Tallahassee
QUESTION:
Is the Department of Health and Rehabilitative Services' Women, Infants, and Children Program authorized to use as negotiable food instrument?
SUMMARY:
The Department of Health and Rehabilitative Services, as the statutorily designated state agency administering the Special Supplemental Food Program for Women, Infants, and Children, funded entirely by federal funds, may utilize a negotiable food coupon plan in operating such food program if authorized by governing federal regulations, provided that the necessary revolving fund is lawfully established outside of the State Treasury for making authorized expenditures from and reimbursements to such revolving fund and the state fiscal and budgetary laws are otherwise complied with by the department in the procedure established for the disbursement of federal funds received by the department for such purposes.
According to information you have supplied to this office, the Special Supplemental Food Program for Women, Infants, and Children, hereinafter referred to as the WIC Program or WIC, is funded by the United States Department of Agriculture under the Child Nutrition Act, Pub.L. No. 95-626. All funding for the WIC Program is federal; no state funds are used for the food dollars in this program.
The Department of Health and Rehabilitative Services is the state health agency which is authorized to administer the WIC Program in Florida and in fact is presently administering this supplemental food program. See, e.g., s. 409.026(1), (2), and (6), F. S.; seealso s. 409.275, F. S., which requires the department to `place into operation in each of the several counties of the state a food stamp program as authorized by the Congress of the United States. The department is designated as the state agency responsible for the administration and operation of such programs.' Section 409.275(2) requires the department to `provide for such instruction and counseling as will best assure that the recipients are able to provide a nutritionally adequate diet through the increased purchasing power received.'
Supplemental information supplied to this office indicates that since 1974 your food delivery system has utilized a special WIC food instrument or coupon, issued to eligible and certified participants, which is redeemable at cooperating retail grocery stores that have submitted a properly executed vendor agreement. The WIC food instrument or coupon is at present nonnegotiable, that is, the cooperating food store must submit the redeemed coupon directly to the Department of Health and Rehabilitative Services in order to be reimbursed for the cost of the food items purchased with the coupon. After the department approves the submittal, the department purchases checks from a local bank made out to the participating food store. The local bank is paid for the checks with a state warrant issued by the State Treasurer upon order of the Comptroller and countersigned by the Governor. Funds are drawn from a trust fund known as the Grants and Donations Trust Fund established pursuant to s. 215.32(1)(b), F. S.
You propose to utilize a negotiable food coupon for the WIC Program. By `negotiable' you mean that the cooperating retail food store would be able to submit the redeemed food coupon directly to its local bank and have its account therein credited at that time, subject to collection. Such proposed negotiable food coupon would not be negotiable in the sense that an eligible recipient would be able to endorse or otherwise transfer his or her food coupons to any other person. Nor would an eligible and certified participant receiving such coupons be able to redeem the coupons at any retail food store other than at a cooperating retail food vendor. You state that such a negotiable coupon would serve as an incentive for a retail food vendor to participate in this special supplemental food program (WIC). Allowing the cooperating food vendor to submit the redeemed food coupon directly to its bank for deposit and collection would be the extent of the negotiability of the coupon, and such coupon would not be otherwise transferable or negotiable. The participating retail food store's local bank would in turn submit the coupons to the department's bank in Tallahassee for collection or reimbursement from a departmental special account. I assume for purposes of this opinion that some type of revolving or petty cash fund would be established pursuant to s.216.271, F. S., for the disbursement of the federal moneys held in the State Treasury in the aforementioned Grants and Donations Trust Fund. Cf. s. 409.2581, F. S., which authorizes the department to use clearing accounts and revolving funds in connection with the administration of the child-support enforcement program; and see s. 216.275, F. S., in connection with the establishment of clearing accounts outside the State Treasury. The Comptroller would reimburse the revolving fund in the department's bank upon proper voucher for reimbursement of expenditures from the revolving fund being presented to the Comptroller for approval and payment. See s. 216.271(3), F. S. For a discussion of the procedure and operation of such a revolving or petty cash fund, see AGO 075-295.
Section 409.026(1), F. S., imposes a general duty on the department to `conduct, supervise, and administer all social and economic services within the state which are or will be carried on by the use of federal or state funds . . . and distribute food stamps and commodities donated by the United States or any agency thereof.' Subsection (2) of that section directs the department to `cooperate fully with the United States Government and its agencies and instrumentalities to the end that the department may receive the benefit of all federal financial allotments and assistance possible' in order to carry out the purposes of ch. 409, F. S. Section 409.023(6)(a) provides that the department may `[a]ccept such duties with respect to social and economic services as may be delegated to it by any agency of the Federal Government . . . .' And s. 409.026(6)(b) allows the department to:
 Act as agent of, or contract with, the Federal Government, state government, or any county or municipal government in the conduct and administration of social and economic services activities in securing the benefits of any public assistance that is available from the Federal Government or any of its agencies and in the disbursement of funds received from the Federal Government, state government, or any county or municipal government for social and economic services purposes within the state . . . .
However, my research has not revealed, nor have you brought to my attention, any statute that expressly or discretely governs the procedures for administering the WIC Program. When an administrative agency has been in general terms delegated the responsibility of administering a law and, in the detailed or complicated administration of the law, direct, immediate, or continuing legislative action is inexpedient or impracticable, the agency may within limitations administer that law in the detailed or continuing procedures of the law. See, e.g., McRae v. Robbins,9 So.2d 284 (Fla. 1942). Additionally, as was stated in State of Florida v. Mathews, 526 F.2d 319 at 326 (5th Cir. 1976): `Once a state chooses to participate in a federally funded program it must comply with federal standards.' Although, as you indicate, no federal regulation mandates the use of a negotiable food coupon such as you are proposing in the WIC Program, a number of other states presently use such a negotiable instrument and federal regulations allow it as a permissible option. See44 Fed. Reg. 44,450 (1979) (to be codified as 7 C.F.R. § 246.10). If it is your department's sound administrative determination that the use of such negotiable food coupon would be beneficial to the WIC Program and all fiscal and budgetary laws of the state are complied with, I know of no constitutional or statutory impediment to the use of such a negotiable food coupon.
The memorandum submitted with your request raises the question whether the pledge of credit clause contained in s. 10, Art. VII, State Const., might prohibit the use of such a negotiable food coupon. Section 10, among other things, prohibits the state or a state agency from giving or lending `its taxing power or credit to aid any corporation, association, partnership or person . . . .' In Nohrr v. Brevard County Educational Facilities Authority,247 So.2d 304 at 309 (Fla. 1971), the Florida Supreme Court stated that the word `credit' as used in s. 10, Art. VII, `implies the imposition of some new financial liability upon the State or a political subdivision which in effect results in the creation of a State or political subdivision debt for the benefit of private enterprises.' The court went on to clarify that, in order for the state or one of its political subdivisions to make a gift or a loan or use its public credit, in violation of s. 10, Art. VII, the public must be liable, either directly or contingently, to pay something to a private person. See also State v. Housing Finance Authority of Polk County, 376 So.2d 1158, 1160 (Fla. 1979), which held, among other things, that, when there is no direct or indirect undertaking by a public body to pay an obligation from public funds and when no public property is placed in jeopardy by a default of a third party, there is no lending of public credit; an indirect public benefit may be adequate to support the public participation in a project that imposes no obligation on the public. In the instant case, the Legislature has expressly determined and declared that the WIC Program is a proper governmental function in the public interest and constitutes a public purpose. The state, through the department, acts merely as the agent of the Federal Government in and for the administration and operation of the federally funded WIC Program and the distribution of subject food coupons thereunder. All food dollars in the WIC Program are federal funds.
Moreover, I do not view this constitutional provision as being applicable to this type of social or welfare assistance program. Otherwise, all public assistance or social and economic assistance programs would be constitutionally proscribed. The Congress, in the first instance, and the state Legislature (see ss. 409.026 and 409.275, F. S.) has determined that the WIC Program serves the public interest and constitutes a federal and state purpose and have found that a certain segment of the public is in need of social and economic or welfare assistance. Cf. Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1978) (holding that financing of improvements to a private, nonprofit hospital served a public purpose for which the county health facilities authority could issue revenue bonds); Nohrr v. Brevard County Educational Facilities Authority, supra (holding that the Educational Facilities Law does not violate the pledge-of-credit cluase of s. 10, Art. VII, State Const.); State v. Housing Finance Authority of Polk County, supra; and AGO 072-198.
You also expressed concern whether the terms of s. 216.331, F. S., would be violated by using a negotiable food coupon in the WIC Program. Section 216.331 provides that `[a]ll moneys in the State Treasury shall be disbursed by state warrant, drawn by the Comptroller and countersigned by the Governor upon the State Treasury, payable to the ultimate beneficiary.' As this office has stated, the provisions of this statute apply only to the use of state warrants for the disbursement of moneys in the State Treasury. See AGO 073-165 (which concluded that, when a revolving fund has been approved and established for a state agency as required by law, the provisions of s. 216.331 are not applicable to reimbursement payments to a revolving fund). See also AGO 073-409 (which concluded that, while ss. 27.34 and 27.54, F. S., respectively prohibit counties from appropriating or contributing funds to the operation of the various state attorneys and offices of the various public defenders, `the mere channeling of federal funds through a county to a state attorney or a public defender for carrying out a special federal-state program would [not] violate the statute'). I therefore conclude that, if the Executive Office of the Governor approves the establishment of a revolving fund established pursuant to s. 18.101(2), F. S., for purposes of operating the department's WIC Program, s. 216.331 would not be violated by the use of the negotiable food coupon system in such program.
Furthermore, I am unaware of any other constitutional provision which would prohibit this type of program. As long as the requirements of s. 216.212, F. S., and other fiscal and budgetary laws of the state are complied with, I know of no statutory or constitutional impediment to the use of a negotiable coupon plan in the WIC Program.
Prepared by: Craig B. Willis, Assistant Attorney General